UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

JAMES J. MCCARTHY,

MEMORANDUM AND ORDER

                 Plaintiff,             CV 08-1122

     -against-               (Wexler, J.)

WACHOVIA BANK, N.A., MEL HARRIS
and MEL HARRIS AND ASSOCIATES, LLC,

                Defendants.

-----------------------------------------------------------------X

IRWIN POPKIN, ESQ.
Attorney for Plaintiff
1138 William Floyd Parkway
Shirley, New York 11967

LELAND L. GREENE, ESQ.
Attorney for Plaintiff
585 Stewart Avenue, Suite 705
Garden City, New York 11530

ROSNER NOCERA & RAGONE, LLP
BY: JOHN A. NOCERA, ESQ.
Attorneys for Defendant Wachovia Bank, N.A.
110 Wall Street 23rd Floor
New York, New York 10005

POPE & HUGHES
BY: RUSSELL POPE, ESQ.
Attorneys for Defendant Wachovia Bank, N.A.
29 W. Susquehanna Avenue
Towson, Maryland 21204

WEXLER, District Judge

This is a case alleging federal claims pursuant to 42 U.S.C. §1983 ("Section 1983") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (the "FDCPA"), as well as claims pursuant to New York State Law. Named as Defendants are Wachovia Bank, N.A. ("Wachovia" or the "Bank"), Mel Harris, an attorney, and his law firm, Mel Harris and Associates, LLC. Presently before the court is Wachovia's motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint as against the Bank. For the reasons that follow, the motion is denied.

## BACKGROUND

### I.    Factual Background

The facts set forth below are drawn from the complaint and are considered to be true for the purpose of this motion. The court also considers documents attached to the complaint and those incorporated in the complaint by reference. Stuto v. Fleishman, 164 F.3d 820, 826 n.1 (2d Cir. 1999); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991). Such consideration includes documents of which plaintiff had notice "and which were integral to [his] claim . . . even though those documents were not incorporated into the complaint by reference." Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993); Cortec Indus. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991).

Plaintiff, James McCarthy ("McCarthy" or "Plaintiff") is a resident of both New York and Florida. In or around January of 2008, McCarthy and his wife opened a bank account at a Wachovia branch in Venice, Florida. Several years prior to the opening of this account, an action was commenced against McCarthy in the New York State District Court for Suffolk County by

2

NCO Portfolio Management Assignee of AmEx Corp. Card (the "State Court Action"). Service was purportedly made on McCarthy, who thereafter defaulted. On January 4, 2004, a judgment of default in the State Court Action was entered against McCarthy in the amount of $8,794.70 (the "Judgment").[1]

The Judgment went uncollected, and no action was taken against McCarthy until January 23, 2008, when Defendant Harris, in an effort to collect on the Judgment, issued a restraining notice to Wachovia (the "Restraining Notice"). The Restraining Notice was issued pursuant to the post-judgment enforcement procedures set forth in the New York Civil Practice Laws and Rules §5222(b) ("CPLR § 5222"). Despite the fact that CPLR § 5222 requires service of a fairly detailed notice of restraint, Plaintiff alleges that he never received the statutory notice. In particular, Plaintiff complains that he never received notice as to the character of certain funds that are exempt from attachment, including Social Security payments.

Upon being served with the Restraining Notice, Wachovia forwarded a letter to McCarthy informing him of the Bank's receipt of the notice, and of its intent to comply therewith. Wachovia also informed McCarthy that, in addition to restraining his account, the Bank would deduct $100 from his account as a processing fee associated with the restraint. While the Bank has, to date, maintained the restraint on Plaintiff's account, it has not turned over any amount in that account to Harris, and it does not appear that Harris has taken action seeking to obtain possession of any funds in the account.

_____

[1]     This court makes no finding as to the propriety of service on Plaintiff, as that is a matter for the State Court. This court is concerned only with the fact that there has been entered a judgment of default against Plaintiff. That judgment, and the service upon which it is based, is considered to be valid unless set aside by the State Court.

3

II.     Allegations of the Complaint

Plaintiff does not appear to have pursued any state court remedies available to him, and the court therefore assumes that both the Judgment and Restraining Notice remain in effect. Instead of proceeding in the state court, Plaintiff commenced this federal action that sets forth six separate claims, three of which are alleged against the Bank. Two causes of action, breach of contract and a violation of Section 349 of New York's Consumer Protection statute, are state law claims. The sole cause of action supporting federal jurisdiction with respect to the Bank is alleged pursuant to Section 1983. This claim alleges that the Bank's compliance with the Restraining Notice was an unreasonable seizure in violation of the Fourth Amendment, and a deprivation of Due Process in violation of the Fourteenth Amendment to the United States Constitution.

III.     The Motion to Dismiss

Wachovia moves to dismiss the complaint in its entirety. First, Wachovia argues that its restraint of Plaintiff's account was made in an effort to comply with the law, and in accord with its express deposit agreement with Plaintiff. In particular, it is alleged that the account agreement states specifically Wachovia's intent to comply with any restraining notice issued by any court, and of its intent to freeze all accounts, wherever located. Wachovia further argues that it has apprised Plaintiff of the necessity of payment of all fees associated with account maintenance, including the fee for attachment of an account. With respect to the claim pursuant to Section 1983, Wachovia's motion to dismiss argues that CPLR § 5222 suffers from no constitutional infirmity. Further, Wachovia argues that any claim pursuant to Section 349 is pre-empted by federal banking laws.

4

In opposition to the motion, Plaintiff argues that he should not be bound by the deposit agreement, as he had no notice of his provisions. Plaintiff acknowledges that the statutory scheme pursuant to which the Restraining Notice was issued comports with the Constitutional notice and hearing requirements of the Due Process Clause. See McCahey v. L.P. Investors, 774 F.2d 543 (2d Cir. 1985); Huggins v. Pataki, 2002 WL 1732804 *4 (E.D.N.Y. 2002). He argues, however, that Defendants acted in violation of Section 1983 when they restrained property located outside of the jurisdiction in which the judgment against him was entered.

## DISCUSSION

### I.     Legal Principles

#### A.     Standards on Motion to Dismiss

In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court rejected the "oft-quoted" standard set forth in Conley v. Gibson, 355 U.S. 41, 78 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46. The court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974. The "retirement" of Conley's language, see Bell Atlantic Corp., 127 S. Ct. at 1969, is not a wholesale rejection of the general pleading rules to which federal courts have become accustomed. Instead, it is a rejection of Conley's "negative gloss" on the accepted pleading standard that once a claim is stated, it may be supported by any set of facts consistent will the allegations of the complaint. Bell Atlantic Corp., 127 S. Ct. at 1969. Indeed, shortly after its decision in Bell Atlantic, the Court reiterated that the pleading of specific facts in support of a complaint is not necessary.

Instead, a complaint need only give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erikson v. Pardus, 127 S. Ct. 2197, 2200 (2007).

The "plausibility" language used by the Supreme Court in Bell Atlantic, has not been interpreted by the Second Circuit to require a "universal standard of heightened fact pleading," but to require a complaint to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.* " Iqbal v. Hasty, 2007 WL 1717803 *11 (2d Cir. June 14, 2007) (emphasis in original). Further, courts have noted that while heightened factual pleading is not the new order of the day, Bell Atlantic holds that a "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Williams v. Berkshire Fin. Grp. Inc., 2007 WL 1677760 *3 (E.D.N.Y. June 11, 2007), quoting, Bell Atlantic Corp., 127 S. Ct. at 1959.

In the context of a motion to dismiss, this court must, as always, assume that all allegations set forth in the complaint are true and draw all inferences in favor of the non-moving party. Watts v. Services for the Underserved, 2007 WL 1651852 *2 (E.D.N.Y. June 6, 2007). The court must ensure, however, that the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974. While a Rule 12 motion is directed only to the sufficiency of the pleading, the court determining the motion may rightfully consider written documents attached to the complaint as well as documents incorporated thereto by reference and those of which plaintiff had knowledge and relied upon in commencing her lawsuit. See Brass v. Amer. Film Techn., Inc., 987 F.2d 142, 150 (2d Cir.

6

1993); <u>Watts</u>, 2007 WL 1651852 *2.

II.   <u>Disposition of the Motion to Dismiss</u>

    A.   <u>Questions of Fact Preclude Dismissal At This Time</u>

The court has reviewed the allegations of the complaint as well as the submissions of the parties. On its face, the Bank appears to have done nothing more than honor a properly served order of a New York court. It further appears that the Bank's action were taken pursuant to its express agreement with Plaintiff, its depositor. The presence of several issues of fact, critical to a determination as to whether Plaintiff is bound by the alleged depositor agreement, preclude determination of this likely dispositive issue. After the taking of discovery, this issue may be ripe for judgment.

With respect to the claim pursuant to Section 1983, fact issues also preclude entry of judgment at this time. To state a claim pursuant to Section 1983, a Plaintiff must allege the deprivation of a federally protected right, and that the defendant acted under color of state law. <u>Dwares v. City of New York</u>, 985 F.2d 94, 98 (2d Cir. 1993). The deprivation alleged here is the Due Process right to notice and opportunity to be heard, as guaranteed by the Fourteenth Amendment to the Constitution. When considering whether a state procedure comports with due process, the court considers: (1) the private interest affected by the state action; (2) the risk of an erroneous deprivation through existing procedures, (3) the probable value, if any, of additional or substitute procedural safeguards, and (4) the burdens that might be imposed by the imposition of additional procedural safeguards. <u>Matthews v. Eldridge</u>, 424 U.S. 319, 334-35 (1976); <u>McCahey v. L.P. Investors</u>, 774 F.2d 543, 548-49 (2d Cir. 1985).

The "color of state law" element recognizes that the United States Constitution regulates

7

only the Government, and not private parties. Lugar v. Edmondson Oil Co., 457 U.S. 922, 936 (1982). It requires a finding of state action, and the accomplishment of that action by a state actor. Id. Private use of state-sanctioned private remedies or procedures does not rise to the level of state action. See, e.g., Flagg Bros., Inc. v. Brooks, 436 U.S. 149 (1978). But when private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found. See, e.g., Lugar, 457 U.S. at 941; Sniadach v. Family Finance Corp., 395 U.S. 337 (1969).

Among those issues that might be dispositive of the claim against the Bank is the threshold issue of state action. The court notes that Plaintiff's amended complaint, which sets forth little in support of the allegation that the Bank acted under color of state law, barely passes the threshold in the context of this motion. Indeed, the only allegation of state action refers to Defendant Harris. With respect to this Defendant, Harris is characterized as "employing state procedures improperly to execute" on the judgment against Plaintiff. Amended Complaint ¶32. The Amended Complaint goes on to state that when Wachovia acted in accord with the Restraining Notice obtained by Harris, it acted in violation of the Constitution.

While the allegation of state action as to the Bank is thin, further factual development is necessary to decide whether the Bank acted under color of state law. Importantly, it is unclear as to whether the Bank is alleged to have acted outside of the bounds of New York State law. Much has been argued as to whether, as a matter of New York law, CPLR § 5222 allows for the restraint of out-of-state funds. New York law is clear that where, as here, a court has jurisdiction over a judgment debtor, it can compel that debtor to turn over out-of-state assets to a judgment creditor. Gryphon Domestic VI, LLC v. APP Internat'l. Finance Co., B.V., 836 N.Y.S.2d 4, 9

(1st Dep't. 2007). Thus, the court in New York could have entered an order, pursuant to the turnover procedures set forth in section 5225 of the CPLR, requiring Plaintiff to turn over assets to satisfy the state court judgment, wherever those assets are located. Less clear is whether New York law authorizes a court to order a third party to turn over out-of-state assets to a creditor. Indeed, that issue has recently been certified by the Second Circuit to the New York Court of Appeals for disposition. See Koehler v. Bank of Bermuda, Limited, 544 F.3d 78, 87 (2d Cir. 2008).

To the extent that an out-of-state restraint is not authorized by CPLR § 5222, Plaintiff states no claim under Section 1983, because misuse of a state statute negates the state action component of Plaintiff's cause of action. The Supreme Court has made clear that such a claim alleges conduct contrary to what is authorized by State law, and therefore cannot constitute state action sufficient to support a claim pursuant to Section 1983. Lugar 457 U.S. at 940 (private misuse of state statute does not amount to conduct attributable to the state and therefore states no Constitutional claim); see Dahlberg v. Becker, 748 F.2d 85, 90 (2d Cir. 1984); Coulette v. Mercury Mortgage, Inc., 2002 WL 32255131 *1 (D. Conn. 2002); Gambino v. Rubenfeld, 179 F. Supp.2d 62, 69 (E.D.N.Y. 2002); Zeppieri v. New Haven Provision Co., 163 F. Supp.2d 126, 133-34 (D. Conn. 2001.)

Also important, and possibly decisive of the issues here, is the open issue of the "location" of the assets restrained. This is not a case where a piece of real or tangible personal property exists only in a foreign state, but a case of funds located in a bank account with presumably worldwide access. It is can certainly be argued that such assets are located both everywhere, and nowhere. Plaintiff, however, holds the steadfast opinion that the restrained

9

funds are located only in the branch where Plaintiff opened his account, and are therefore outside of the State of New York. This allegation is essential to Plaintiff's claim that it is unconstitutional to attach out-of-state property based upon a New York judgment.

With respect to this issue, Plaintiff relies on the "separate entity" rule set forth by the court in Cronin v. Schilling, 100 N.Y.S.2d 474 (N.Y. County 1950). This rule states that for purposes of attachment, each branch of a bank is a separate entity, and an order of attachment served on one branch cannot reach assets held in a different branch. Cronin, 100 N.Y.S.2d at 476. Cronin noted that each branch of a bank "is a separate entity, in no way concerned with accounts maintained by depositors in other branches or at the home office." Cronin, 100 N.Y.S.2d at 476. The rationale for treating each branch separately, as set forth in Cronin, was the "endless confusion" and "intolerable burden" that would result if a bank with several branches were called upon to "cash checks and make loans to a depositor at any branch at which he may see fit to call . . . ." Id.

This rule of law which was described as "well-established" in 1950, seems outdated in light of current banking transactions. There is no question that modern banking makes Plaintiff's funds available to him at any branch in the country and likely, the world. The "endless confusion" feared by Cronin would not likely ensue if Plaintiff saw fit to call upon any given branch of Wachovia to perform a financial transaction on any given day. Indeed, the anomaly of allowing a bank that "trumpets their account-holders' ability to access their funds instantaneously anywhere in the world" to "rely on the vestige of the separate entity rule to shield such accounts from attachment by judgment creditors," has been noted. Motorola Credit Corp. v. Uzan, 288 F. Supp.2d 558, 561 (S.D.N.Y. 2003).

10

Proper disposition of Plaintiff's claims requires the court to engage in fact finding as to the particular banking procedures utilized by Wachovia in making funds available to Plaintiff. While the court may not declare the single entity rule to be ineffective in all cases, there is a question as to whether it should be applied in this case. The viability of Plaintiff's claim of an unconstitutional out of state attachment may well turn on this issue.

Even assuming Plaintiff can clear the hurdles of showing state action, and seizure of out of state property, open questions of fact also make it impossible for the court to engage in the due process balancing analysis set forth in <u>Matthews</u>. A determination as to the level of notice and opportunity to be heard that is required must balance the interest of the creditor to collect on a judgment against that of the judgment debtor to contest any attachment of funds. Also considered is the burden, if any, on of the State of New York in requiring any additional procedural safeguard proposed by Plaintiff. <u>See</u> <u>Matthews</u>, 424 U.S. at 334-35. There are no facts indicating the precise additional safeguard sought and the court cannot assess, on the pleadings alone, the nature of any burden associated therewith.

Finally, the court notes that Plaintiff's amended complaint alleges a violation of the Fourth and Fourteenth Amendments. While his papers refer to early cases regarding the issue of state enforcement of foreign judgments, <u>see</u> <u>McElmoyle v. Cohen</u>, 38 U.S. 312 (1839), he has not set forth the specific constitutional basis upon which such a claim is a violation of Section 1983. Accordingly, the court is in no position to decide the viability of such a claim.

CONCLUSION

For the foregoing reasons, the motion of Defendant Wachovia to dismiss is denied. If they have not already done so, the parties are directed to contact the assigned Magistrate Judge

for the purpose of entering into an appropriate discovery schedule. The Clerk of the Court is directed to terminate the motion to dismiss.

SO ORDERED

_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
December 4, 2008