UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
JAMES J. MCCARTHY,

Plaintiff,

-against-

WACHOVIA BANK, N.A., MEL S. HARRIS, MEL HARRIS AND ASSOCIATES, LLC.,

Case No.: 08-cv-01122-LDW-ETB

Defendants.
---------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WACHOVIA BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

ROSNER NOCERA & RAGONE, LLP
110 Wall Street, 23rd Floor
New York, New York 10005
(212) 635-2244

-and-

TREANOR POPE & HUGHES
29 W. Susquehanna Avenue
Towson, Maryland 21204
(410) 494-7777

Attorneys for Defendant Wachovia Bank, N.A.

# TABLE OF CONTENTS

**PAGE**

**TABLE OF AUTHORITIES**……………………….………………………………………..iii

**PRELIMINARY STATEMENT**…………………………………………………...……1

**STATEMENT OF FACTS**…………………………………………………………..…..1

The McCarthy Account……………………………………………………………2

Wachovia Bank, National Association……………………………………………3

The Restraining Notice……………………………………………………………3

Procedural Background……………………………………………………………5

Plaintiff's Second Amended Complaint….………………………………………6

**POINT I:** PLAINTIFF'S ACCOUNT AGREEMENT AUTHORIZED WACHOVIA TO HONOR THE RESTRAINING NOTICE ISSUED BY HARRIS……..…………7

**POINT II:** A NEW YORK RESTRAINING NOTICE CAN VALIDLY RESTRAIN TRANSFERS OF JUDGMENT DEBTOR PROPERTY OUTSIDE OF NEW YORK…………………………………………………………………………10

**POINT III:** PLAINTIFF'S ANTIQUATED VIEW OF THE NATION'S BANKING SYSTEM HAS BEEN OVERRULED BY JUDICIAL DECISIONS RECOGNIZING MODERN TECHNOLOGY AND PRACTICES…….………14

**POINT IV:** WACHOVIA, AS A GARNISHEE, HAS NO DUTY TO DETERMINE THE VALIDITY OF A RESTRAINING NOTICE AND IS NOT LIABLE FOR ANY ALLEGEDLY IMPROPER RESTRAIN……………...………………………16

**POINT V:** THE ISSUES BETWEEN PLAINTIFF AND WACHOVIA ARE CONTRACTUAL IN NATURE AND NO CONSTITUTIONAL DIMENSIONS EXIST…………………………………………………………………………19

a. Wachovia is not a state actor and its acts vis a vis plaintiff were contractual in nature…………………………………………...…………………………19

b. No Constitutional Violation Occurs When A Bank Honors Legal Process Arising Under New York's CPLR § 5222……….………………………………21

**POINT VI:** FEDERAL LAW PRE-EMPTS THE PLAINTIFF'S CLAIMS IN THIS CASE.23

A. The History and Framework of National Bank Regulation…………………23

B. Pre-emption is Necessary Whenever State Law Conflicts With or Otherwise Impairs the Exercise of a National Bank's Powers……………………………25

C. Wachovia's Garnishment Processing Fee is Authorized under the National Bank Act…………………………………………………………………27

D. Wachovia's Central Garnishment Processing System is Protected by the National Bank Act………………………..………………………………29

**CONCLUSION**……………………………………………………………………30

# Table of Authorities

## CASES

Abuhamda v. Abuhamda, 236 A.D.2d 290, 654 N.Y.S.2d 11 (1st Dept. 1997) 11

Bank of America v. City & County of San Francisco, 309 F.3d 551 (9th Cir. 2002), cert denied, 123 S. Ct. 2220 (2003) 26,29

Bank One v. Guttau, 190 F.3d 844 (8th Cir. 1999), cert. denied, 529 U.S. 1087 (2000) 26

Barnett Bank v. Nelson, 517 U.S. 25 (1996) 25

Beneficial National Bank v. Anderson, 539 U.S. 1 (2003) 23

Cammon v. City of New York, 260 A.D.2d 70, 73-74, 700 N.Y.S.2d 110, 113 (1st Dept. 1999), aff'd, 95 N.Y.2d 583, 721 N.Y.S.2d 579, 744 N.E.2d 114 (2000) 28

Carl v. Republic Security Bank, 282 F. Supp. 2d 1358 (S.D. Fla. 2003) 20

Carrick Realty Corp. v. Flores, 157 Misc. 2d 868, 598 NYS 2d 903 (N.Y. City Civ. Ct. 1993) 15

Cedeno v. Indymac Bancorp, Inc., 2008 WL 3992304 (S.D.N.Y. Aug. 26, 2008) 26

Chin Sung Yu v. Riggs Nat. Bank of Washington, D.C., 248 A.D.2d 235, 670 N.Y.S.2d 187 (1st Dept. 1998) 17

Cronan v. Schilling, 100 N.Y.S. 2d 474 (N.Y. Co. Sup. Ct. 1950), aff'd, 282 A.D. 940, 126 N.Y.S. 2d 192 (1st Dept. 1953), app. denied, 283 A.D. 655 127 N.Y.S. 2d 809 (1st Dept. 1954) 14,17

Davis v. Elmira Savings Bank, 161 U.S. 275 (1896) 24

Digitrex v. Johnson, 491 F. Supp 66 (S.D.N.Y. 1980) 14

Easton v. Iowa, 188 U.S. 220 (1903) 25

Ehrlich v. Federal Deposit Insurance Corp , 357 F.Supp. 196 (D.C.Ill.1973) 21

First Union National Bank, v. Webspan, Inc., (Sup. Ct., Bronx Cty. [No.: 13345/98]) 12

Freda v. McNamara, 254 A.D.2d 251 (2d Dep't 1998) 9

Fuentes v. Shevin 407 U.S. 67, 92 S.Ct. 1983 (1972) 21

Fultz v. World Savings & Loan Ass'n, 571 F. Supp.2d 1195 (W.D. Wash. 2008) 26

Granger v. Harris, 2007 WL 1213416 (E.D.N.Y. 2007) 20

Gryphon Domestic VI v. APP International Finance, 41 A.D.3d 25, 836 N.Y.S. 2d 4 (1st Dept. 2007) 10,11

Guthrie v. Harkness, 199 U.S. 148 (1905) 24

Hicks v. Midwest Transit, 531 F.3d 467 (7th Cir. 2008) 19

Huggins v. Pataki, 2002 WL 1732804 (E.D.N.Y.2002) 22

In re: Cravey & Associations Inc., 109 B.R. 472 (Bkr. M.D. Fla. 1989) 20

Johnson v. Chemical Bank, 1996 WL 706893 (S.D.N.Y.1996) 18

Jonas v. Citibank, NA, 414 F.Supp. 2d 411 (S.D.N.Y. 2006) 17

Koehler v. Bank of Bermuda, 12 N.Y. 3d 533, 911 N.E.2d, 825, 883 N.Y.S.2d 763 (2009) 6,10,11,12,14

Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101 (2d Cir. 2001) 28

Lincoln Financial Services v. Miceli, 17 Misc.3d 1109(A), 851 N.Y.S.2d 58 (N.Y. Dist. Ct. 2007) 18

**CASES (Cont.)**

| | |
|---|---|
| Louisiana Pub. Serv. Comm'n v. FCC, 476 U.S. 355 (1986) | 25 |
| Mazzuka v. Bank of North America, 53 Misc. 2d 1053, 280 N.Y.S.2d 495 (N.Y. City Civ. Ct. 1967) | 18 |
| McCahey v. L.P. Investors, 774 F.2d 543 (2d Cir.1985) | 6,21,22 |
| Metrobank v. Foster, 193 F.Supp.2d 1156 (S.D. Iowa 2002) | 26 |
| Mincey v. World Savings Bank, FSB, 2008 WL 3845438 (D.S.C. Aug. 15, 2008) | 26 |
| Monroe Retail, Inc. v. Charter One Bank, N.A., 2007 WL 2769645 (N.D. Ohio 2007) | 28 |
| S&S Machinery Corp. v. Manufacturers Hanover Trust Co., 219 A.D.2d 249, 683 N.Y.S.2d 953 (1st Dept. 1996) | 15 |
| Silvas v. E*Trade Mortgage Corp., 514 F.3d 1001 (9th Cir. 2008) | 26 |
| State Bank of India v. Star Diamonds, Inc., 901 F.Supp. 177 (S.D.N.Y.1995) | 8 |
| Tiffany v. Nat'l Bank of Missouri, 85 U.S. (18 Wall.) 409 (1874) | 23 |
| Tombers v. FDIC, 2009 WL 3170298 (S.D.N.Y. Sept. 30, 2009) | 26 |
| Tuskey v. Volt Information Sciences, Inc. 2001 WL 873204, 3 (S.D.N.Y. 2001) | 8 |
| Wachovia Bank, N.A. v. Anoplate Manufacturing, et ano., Supreme Court, Bronx County [Index No. 18542/04] (Decision dated January 6, 2005) | 9,11 |
| Walsh v. Wal-Mart Stores, Inc. 836 F.2d 1152 (Cir. 8 1988) | 13 |
| Watters v. Wachovia Bank, N.A., 550 U.S. 1, 127 S.Ct. 1559 (2007) | 26 |
| Wells Fargo Bank, N.A. v. James, 321 F.3d 488 (5th Cir. 2003) | 26,28 |

**STATUTES**

| | |
|---|---|
| 12 C.F.R. §7.4002 (2004) | 24 |
| 12 C.F.R. §7.4002(a) | 27,28 |
| 12 C.F.R. §7.4002(b)(2) (2004) | 27 |
| 12 U.S.C. § 21 (2001) | 23 |
| 12 U.S.C. §24 (Seventh) (2001) | 28 |
| 12 U.S.C. §481 (2001) | 23 |
| NY CPLR § 5209 | 17 |
| NY CPLR § 5222 | 6,17,21,22 |
| NY CPLR § 5232 | 17 |
| NY CPLR § 5239 | 18 |
| NY CPLR § 5240 | 18 |

## PRELIMINARY STATEMENT

Defendant Wachovia Bank, N.A. (hereinafter "Wachovia")[1], respectfully submits this memorandum of law in support of its instant motion for an Order pursuant to Fed. R. Civ. P. 56, granting Wachovia summary judgment and dismissing the plaintiff's Second Amended Complaint as against Wachovia.

Plaintiff commenced this action seeking damages purportedly sustained in connection with a post-judgment restraining notice issued by defendants Mel S. Harris and Mel Harris & Associates (collectively "Harris"), which Harris served upon Wachovia. As a result of the service of the restraining notice, the sum of $5,712.58 was restrained in a Wachovia bank account maintained by plaintiff and non-party Cynthia McCarthy.

Wachovia respectfully submits that plaintiff's Amended Complaint should be dismissed as against it since: (1) all actions taken by Wachovia in connection with the restraining notice were in accordance with applicable law and the express terms of the account agreement between the parties; (2) plaintiff's claims, which purportedly arise under New York's General Business Law, are pre-empted by Federal Law; and (3) plaintiff's allegations as to Wachovia's practice of charging a fee for its centralized processing of garnishments are pre-empted by Federal law.

## STATEMENT OF FACTS

The Court is respectfully referred to the accompanying affidavits of Wachovia by Joanne Kooklin, sworn to on the 21st day of April, 2010 (the "Kooklin Affidavit"), Erin Shannon, sworn to on the 22nd day of April, 2010, (the "Shannon Affidavit") and that of Wachovia's counsel, Peter A. Ragone, sworn to on the 23rd day of April, 2010 (the "Ragone Affidavit"), together with

---

[1] Following the commencement of this case, on March 20, 2010, Wachovia merged with Wells Fargo, National Association ("Wells Fargo"). Since all transactions alleged in plaintiff's Second Amended Complaint occurred prior to March 20, 2010 and involved Wachovia, for purposes of this motion, hereinafter the bank formerly known as Wachovia Bank, N.A., shall be referenced as "Wachovia."

the documents annexed as exhibits thereto, for a full rendition of the relevant facts. However, the pertinent facts are as follows:

**The McCarthy Account**

On January 22, 2008, plaintiff James J. McCarthy, and non-party Cynthia McCarthy, residents and citizens of the State of New York, opened checking Account No. 1010194828703 at a Wachovia branch located in the State of Florida (the "McCarthy Account"). When the McCarthy Account was opened, plaintiff McCarthy and non-party Cynthia McCarthy each signed a Wachovia Customer Access Agreement, which provides, in pertinent part, as follows:

> **Acceptance of Terms and Conditions**:
> I agree to be bound by the terms and conditions including, but not limited to Wachovia's Deposit Agreement and Disclosures,… I also agree to pay all fees associated with such products, accounts and services in accordance with the fee schedules which will be provided to me by Wachovia. (Ex. "1") (emphasis added).

**A**t the time the McCarthy Account was opened, plaintiff McCarthy was provided with a copy of Wachovia's Deposit Agreement and Disclosures for Personal Accounts, effective October 12, 2007 ("Deposit Agreement") as well as a copy of Wachovia's Fees and Funds availability. (See Exhibit "14," plaintiff's Deposition Transcript at 14). The Deposit Agreement provides under Section 27, "Legal Process Affecting Accounts" in pertinent part, as follows:

> **27.** **Legal Process Affecting Accounts.** If legal action such as an attachment, garnishment, levy or other state or federal legal process ("legal process") is brought against your account… you hereby authorize us to accept and comply with it, no matter how it was received by us. You hereby direct us not to contest on your behalf any such document or legal process…You agree that because we have financial centers or offices in numerous jurisdictions and states other than where your account was opened, if we are served with any process or receive any document as referenced above in or from any jurisdiction or state, you hereby direct us to recognize and honor such service of process. (Ex."2") (emphasis added).

**Wachovia Bank, National Association**

At all relevant times, Wachovia was a national banking association organized under the laws of the United States.[2] Wachovia maintained over 3400 offices in 21 states and transacted business in numerous states and jurisdictions, including, New York, Florida and Pennsylvania. Any Wachovia depositor, including plaintiff, could access his or her account and transact business from any of Wachovia's offices in any of those states. (Kooklin Aff. at ¶ 8)

A Wachovia bank account could also be opened from any state in the United States by telephone or online via the internet. Once an account was opened, the initial deposit could be made from anywhere in the United States, via direct deposit, ATM or by mail. Any subsequent deposit or withdrawal could likewise have been made by any method from anywhere in the United States. (Kooklin Aff. at ¶¶ 9-10)

Any depositor, (including plaintiff) could have, among other activities, engaged in the following transactions and/or request the following services from anywhere in the United States (and many other countries), whether by telephone or online: view account activity, transfer funds between accounts, check balances, pay bills, view images of posted checks, order checks and stop payment on checks. (Kooklin Aff. at ¶ 13)

Wachovia ATMs were available in more than 21 states. At any Wachovia ATM, a Wachovia depositor, such as plaintiff, could access his funds, including making deposits, cash withdrawals, obtaining a printout of the last monthly statement, transfer money between accounts, making payments to a Wachovia loan or credit account, check account balances, reorder checks, among other activities.(Kooklin Aff. at ¶ 10-11)

**The Restraining Notice**

On or about February 29, 2008, Wachovia received, at its central Legal Order Processing

[2] Wells Fargo the successor to Wachovia is also a national banking association.

office located in Philadelphia, Pennsylvania, an Information Subpoena and Questions with Restraining Notice (the "Restraining Notice") served by defendant Harris in the action entitled NCO Portfolio Management assignee of Amex Corp. Card v. James J. McCarthy, Fourth Dist. Ct., Suffolk Cty. (Index No. SMC-10443-03 (the "Collection Action"). The Restraining Notice identified plaintiff as a judgment debtor against whom judgment in the sum of $8,891.74 had been entered, and further provided, in relevant part, as follows:

**RESTRAINING NOTICE**

*******

> **TAKE NOTICE** that pursuant to subdivision (b) of Section 5222 of the Civil Practice Law and Rules, which is set forth in full herein, you are hereby forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such proceeds or pay over or otherwise dispose of any such debt except as therein provided.
>
> **TAKE FURTHER NOTICE** that this notice also covers all property in which the judgment debtor has an interest now or hereafter coming into your possession or custody and all debts coming due from you to the judgment debtor.

(Shannon Aff. at ¶¶ 10-11, Ex. "3")

At the time Harris served the Restraining Notice on Wachovia, the sum of $5,712.58 was on deposit in the McCarthy Account, which amount was then restrained by Wachovia, as required by the Restraining Notice served by Harris. Wachovia answered the Information Subpoena which accompanied the Restraining Notice, and informed Harris, among other things, as follows:

> "Wachovia requires for Joint Accounts.
> Turnover Order or Conditional Release
> Letter with signatures of Account Holders." (Exhibit "4").

By letter dated February 29, 2008, Wachovia forwarded plaintiff and non-party Cynthia McCarthy a copy of the Harris Restraining Notice and notified them that the McCarthy Account

had been restrained pursuant to the Restraining Notice. (Shannon Aff. at ¶ 14)

On March 18, 2008, and without communicating with Wachovia, plaintiff commenced the instant case against Wachovia and Harris.

Wachovia never paid out any sums from the McCarthy Account to the Sheriff or to defendant Harris following service of the Restraining Notice.  Wachovia instead held such funds in suspense. Following expiration of the Restraining Notice, and since no turnover or other order directing payment of such funds was ever served on Wachovia, the restraint against the funds in the McCarthy Account was released, and plaintiff thereupon withdrew all funds in the McCarthy Account on March 4, 2009. (Shannon Aff. at ¶¶ 17-18)

**Procedural Background**

This action was commenced by plaintiff on or about March 18, 2008, by the filing of a Complaint with this Court. Subsequently, on or about April 15, 2008, plaintiff filed an Amended Complaint (i.e. Ex. "7"). By notice of motion dated July 1, 2008, Wachovia moved pursuant to Fed. R. Civ. P. 12(b)(6), for an Order dismissing plaintiff's Amended Complaint. That motion was decided pursuant to the Order of the Hon. Judge Leonard D. Wexler, dated December 4, 2008. Wachovia thereafter duly filed its answer to plaintiff's amended complaint on December 15, 2008.

On June 17, 2009, plaintiff served and filed a Notice of Motion, for leave to serve and file a Second Amended Complaint. Plaintiff's motion was granted by Order of the Hon. E. Thomas Boyle, U.S.M.J. dated January 19, 2010.  On January 21, 2010, plaintiff served and filed his Second Amended Complaint. On January 26, 2010, Wachovia served and filed its Answer to the Second Amended Complaint.

**Plaintiffs' Second Amended Complaint**

Plaintiff's Second Amended Complaint asserts six (6) causes of action as follows:

**Count I**: Plaintiff alleges that Wachovia improperly honored the Restraining Notice served by Harris in connection with the Collection Action. Plaintiff asserts that Wachovia knew, or should have known, that the Restraining Notice allegedly had no effect on accounts opened outside of New York. Plaintiff further alleges that to the extent New York's CPLR § 5222 does not contain a territorial limitation, such statute and other post-judgment enforcement measures under New York CPLR Article 52, result in an alleged denial of due process. Thus, plaintiff claims that Wachovia's actions in honoring the Restraining Notice violated plaintiff's rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

These claims asserted by plaintiff against Wachovia have no merit since: plaintiff contractually agreed and directed Wachovia in the Deposit Agreement not to contest, but rather to honor process issued and served upon Wachovia in any jurisdiction where Wachovia has offices; Wachovia is not a "state actor"; pursuant to McCahey v. L.P. Investors, 774 F.2d 543 (2nd Cir. 1982) and other authorities, New York CPLR Article 52 is not unconstitutional; and pursuant to the recent decision by the New York State Court of Appeals in Koehler v. Bank of Bermuda, Ltd., 12 N.Y.3d 533, 911 N.E.2d 825, 883 N.Y.S. 2d 763 (2009) and prior Appellate Division rulings, the law of this State is clear that a New York Court can restrain transfers of property outside of the state of New York.

**Counts II, III and IV** are solely directed against defendant Harris.

**Count V**: Plaintiff asserts that Harris induced Wachovia to breach its contract with plaintiff. As set forth in Point I, infra, Wachovia fully complied with the Deposit Agreement and as a result, Wachovia did not "breach" any contract with plaintiff.

**Count VI**: Plaintiff alleges violations of N.Y. General Business Law Article 22-A ("Deceptive Practices Act") by defendants. Specifically, plaintiff accuses Harris of "wrongfully issuing of legal process" and of "wrongfully seizing property". To the extent directed at Wachovia, such State Law claims are pre-empted by Federal Law, specifically, the National Bank Act, and such claims are further precluded by New York law and plaintiff's Deposit Agreement with Wachovia.

Based on the authorities and arguments set forth below, Wachovia therefore respectfully submits that its instant motion for summary judgment should be granted, and that plaintiff's Second Amended Complaint should be dismissed as against Wachovia in all respects.

## POINT I

## PLAINTIFF'S ACCOUNT AGREEMENT AUTHORIZED WACHOVIA TO HONOR THE RESTRAINING NOTICE ISSUED BY HARRIS

Plaintiff and non-party Cynthia McCarthy specifically agreed in the Deposit Agreement applicable to the McCarthy Account that, if Wachovia received "any document that appears or is purported to be legal process issued out of any court or governmental agency, you hereby authorize us to accept and comply with it, no matter how it was received by us. You hereby direct us to not to contest on your behalf any such document..." (See, Shannon Aff. ¶ 9, Ex. "2" at ¶ 27) (emphasis added). Furthermore, plaintiff also agreed that Wachovia is to "recognize and honor" legal process such as the Restraining Notice received by Wachovia in any such jurisdiction or state. In that regard, the Deposit Agreement plainly provides, in relevant part, as follows:

> You agree that because we have financial centers or offices in numerous jurisdictions and states other than where your account was opened, if we are served with any process or receive any document as referenced above in or from any jurisdiction or state, you hereby direct us to recognize and honor such service

of process. (Shannon Aff. ¶ 9-Ex. "2" at ¶ 27).

The Memorandum and Order issued Judge Leonard D. Wexler dated December 4, 2008, (the "December 4 Memorandum") addressed the application of this provision of the Deposit Agreement as a potential bar to plaintiff's claims against Wachovia, which held, in part, as follows:

> "It further appears that the Bank's action were taken pursuant to its express agreement with Plaintiff, its depositor. The presence of several issues of fact, critical to a determination as to whether Plaintiff is bound by the alleged depositor agreement, preclude determination of this likely dispositive issue. After the taking of discovery, this issue may be ripe for judgment."

(Ex. "9", p. 7) (emphasis added). This issue has been resolved in favor of Wachovia through the course of discovery.

At his deposition, plaintiff admitted signing the Customer Access Agreement pursuant to which he agreed to be bound by the terms and conditions contained in Wachovia's Deposit Agreement and Disclosures for Personal Accounts ("Deposit Agreement"). Plaintiff also admitted receiving a copy the Deposit Agreement, and in fact at his deposition, produced the original Deposit Agreement he had been given by Wachovia when he opened his account. (Ragone Aff. at ¶¶ 22-23).

While plaintiff might deny actually having read the Deposit Agreement, the "law is clear that parties are 'conclusively' bound by the contracts they sign whether or not the party has read the contract as long as there is no fraud, duress or some other wrongful act of the other party." Tuskey v. Volt Information Sciences, Inc., 2001 WL 873204, 3 (S.D.N.Y. 2001). See also, State Bank of India v. Star Diamonds, Inc., 901 F.Supp. 177, 179 (S.D.N.Y.1995) (holding that a party is legally bound by his or her signature to a contract and is conclusively presumed to know its contents and to assent to them). Further, that law is clear that a party is bound by papers signed

by him, even if they were not explained to him. Freda v. McNamara, 254 A.D.2d 251, 252-53 (2d Dep't 1998).

As a result, any previously existing issue as to whether plaintiff is bound by the Deposit Agreement has been resolved, as plaintiff admittedly received and agreed to be bound by the terms of the Deposit Agreement.

The case of Wachovia Bank, N.A. v. Anoplate Manufacturing, et ano., Supreme Court, Bronx County [Index No. 18542/04] (Decision dated January 6, 2005), is directly on point. In Wachovia v. Anoplate, the plaintiff-judgment debtor was a Connecticut depositor against whom judgment had been entered in the State of New York. Like plaintiff in the instant case, the depositor in Anoplate objected to the restraint of its Wachovia account following service of a New York restraining notice, arguing that the restraining notice served by the plaintiff was ineffective and did not reach its accounts which had been opened in the State of Connecticut.

The Anoplate court rejected the depositor's arguments and ruled that since the depositor had "contractually agreed and specifically authorized Wachovia to recognize and honor' process in any jurisdiction or state," the New York restraining notice served on Wachovia was effective against a bank account opened in Connecticut.  The contractual provision contained in the Deposit Agreement relied upon by the court in the Anoplate case is identical to that at bar. A copy of the Decision rendered by the court in Anoplate is annexed hereto as Exhibit "A."

Plaintiff's assertion in Count I of his Second Amended Complaint that "Wachovia knew, or should have known, that the Restraining Notice was of no force or effect in the State of Florida" (Second Amended Complaint at ¶34), is therefore flatly contradicted by the clear and unambiguous terms of the Deposit Agreement between plaintiff and Wachovia.  Plaintiff specifically agreed in the Deposit Agreement that Wachovia was authorized to accept "any

document that appears or is purported to be legal process" and further "directed" Wachovia to accept service of such process in any state, including states other than where the McCarthy Account was opened.

Likewise, Count V of plaintiff's Second Amended Complaint, where plaintiff alleges that Harris induced Wachovia to breach its contract with Plaintiff, must also fail as a matter of law, because Wachovia never breached the terms of the Deposit Agreement. Rather, Wachovia acted in accordance with the express terms of the Deposit Agreement when it honored the Restraining Notice.

Accordingly, Counts I and V of the Second Amended Complaint should be dismissed.

**POINT II**

**A NEW YORK RESTRAINING NOTICE CAN VALIDLY RESTRAIN TRANSFERS OF JUDGMENT DEBTOR PROPERTY OUTSIDE OF NEW YORK**

The law in this State unequivocally provides that CPLR Article 52 post-judgment process issued out of a New York court can restrain the transfer of property located outside of the state, if the New York court has personal jurisdiction over the debtor or garnishee. Koehler v. Bank of Bermuda, 12 N.Y. 3d 533, 911 N.E.2d, 825, 883 N.Y.S.2d 763 (2009); Gryphon Domestic VI v. APP International Finance, 41 A.D.3d 25 at 39, 836 N.Y.S. 2d 4 at 10 (1st Dept. 2007).

In Koehler, the New York Court of Appeals ruled that "CPLR article 52 contains no express territorial limitation barring the entry of a turnover order that requires a garnishee to transfer money or property into New York from another state or country." Id. The Court of Appeals therefore ruled that "a court sitting in New York that has personal jurisdiction over a garnishee bank can order the bank" to turnover property of the debtor "located outside of New York." In so ruling, the Court in Koehler observed as follows:

> In short, article 52 post-judgment enforcement involves a proceeding against a person-its purpose is to demand that a person convert property to money for payment to a creditor" Id. (Emphasis added).

Since Wachovia conducted business in the State of New York, including Suffolk County, when Wachovia was served with the Restraining Notice issued by defendant Harris, it became subject to the jurisdiction of the Court in the Collection Action. Accordingly, Wachovia as garnishee had no choice but to restrain the McCarthy Account.

In rendering its holding, the Koehler court relied upon, among other authorities, the case of Gryphon Domestic VI v. APP International Finance, 41 A.D.3d 25 at 39, 836 N.Y.S. 2d 4 at 10 (1st Dept. 2007), where the New York Appellate Division, First Department, held that "a New York Court can restrain transfers of property outside the State so long as it has jurisdiction over the transferor." (emphasis added). In so ruling, the Gryphon court reversed the trial court's decision which had vacated "the restraining notices because the defendants' property is located outside of New York, and restraining notices issued by the Court do not reach property in other jurisdictions." 836 N.Y.S. 2d at 8. The Court in Koehler v. Bank of Bermuda, affirmed the ruling in Gryphon, and specifically held that to the extent a New York Court has jurisdiction over a garnishee, legal process issued by the New York Court can reach property of a judgment debtor held by the garnishee outside of the State.

In the case of Abuhamda v. Abuhamda, 236 A.D.2d 290, 654 N.Y.S.2d 11 (1st Dept. 1997), the New York Appellate court held that it could restrain a bank account opened in the country of Jordan, since the garnishee bank did business in New York and was hence subject to jurisdiction of the Court in New York.

The court in Wachovia Bank, N.A. v. Anoplate Manufacturing, supra, (i.e. Exhibit "A"), reached the same result, finding that a New York Restraining Notice served on Wachovia was

effective to restrain funds in a Connecticut bank account, since the Court had jurisdiction over the judgment debtor.  Id.  The case of First Union National Bank, v. Webspan, Inc., Sup. Ct., Bronx Cty. [Index No.: 13345/98] (copy of Opinion dated June 16, 1998 annexed as Exhibit "B" hereto), is also on point. Since the Court in Webspan had jurisdiction over the judgment debtor, the court ruled that it could direct payment of the judgment in New York from "out-of-state assets of the defendant judgment debtor." Id.  In so ruling, the Webspan court upheld the validity of an execution issued in the State of New York against a bank account originally opened in New Jersey.

The Court in Webspan also held, that, as to the funds on deposit in a bank account, that such "property executed upon is intangible, and incapable of being deemed in one state or another" (Ex. "B").  In his December 4 Memorandum, Judge Wexler similarly noted that funds in a bank account (such as the McCarthy Account) "are located both everywhere and nowhere".

Plaintiff asserts that CPLR Article 52 is unconstitutional, to the extent it contains no express territorial limitation and seeks to affect property located outside of New York. Such claim by plaintiff is a baseless and desperate attempt to circumvent the recent ruling in Koehler v. Bank of Bermuda and other authorities cited above.

While CPLR Article 52 does not have an express territorial limitation, it certainly does have jurisdictional limitations. As held by the Court of Appeals in Koehler, the key issue is whether or not the court has jurisdiction over the judgment debtor or garnishee involved. In this case, there can be no question that the New York court had jurisdiction over the parties involved. In that regard, the New York court in the Collection Action determined it had jurisdiction over plaintiff when it rendered judgment against him.  In fact, in the Second Amended Complaint, and during his deposition testimony, plaintiff admitted to being a resident of New York State (See,

Ragone Aff., Ex. "12" at ¶ 4, Ex."14" at pgs. 6-7).   There is also no dispute that Wachovia does business in New York and is subject to jurisdiction in this state.

In any event, "the constitutionality of a writ of garnishment is not something which an employer-garnishee must determine before complying with its terms." When state law "places the responsibility upon the judgment creditor, not the garnishee, to insure that the judgment debtor receives notice of his rights… An employer presented with a court order and writ of garnishment is required to comply with that order and garnish its employee's wages; failure to garnish may render the employer-garnishee liable to the judgment creditor." Walsh v. Wal-Mart Stores, Inc., 836 F.2d 1152, 1153 (Cir. 8 1988)

Similarly, in this case, when Wachovia received the Restraining Notice served by Harris, it was required to comply with it. As observed by the Court in Walsh v. Wal-Mart, Id. Wachovia was not required to first determine the validity of the Harris Restraining Notice before complying with its terms. The failure of Wachovia to comply with the Restraining Notice would have rendered Wachovia liable to Harris.

Count I of the Second Amended Complaint is therefore premised upon the erroneous assertion that process issued by a New York State court cannot have any extra territorial effect as a matter of law.   Under the rulings in Koehler Gryphon, Anoplate, Abuhamda and Webspan, supra, restraining notices issued out of New York courts can operate to validly restrain bank accounts, opened outside of New York state, such as the McCarthy Account, where, as here, the New York court has jurisdiction over the garnishee bank and depositor. The Restraining Notice served on Wachovia is for all intents and purposes identical to a Court ordered injunction, which under the rulings in Koehler, supra, Abuhamda, supra, and Gryphon, supra Wachovia was required to honor, irrespective of where the McCarthy account had been opened.

Accordingly, Wachovia acted properly in honoring the Restraining Notice served by Harris, and plaintiff's claims in Count I of the Second Amended Complaint against Wachovia should therefore be dismissed.

## POINT III

## PLAINTIFF'S ANTIQUATED VIEW OF THE NATION'S BANKING SYSTEM HAS BEEN OVERRULED BY JUDICIAL DECISIONS RECOGNIZING MODERN TECHNOLOGY AND PRACTICES

The fundamental allegation by plaintiff in Count I of the Second Amended Complaint, that legal process issued by a New York State Court can never be effective outside of New York state, has been utterly nullified by the recent Court of Appeals decision of Koehler v. Bermuda, supra. In any event, it bears mention that plaintiffs' assertion is based upon a former rule, long since abrogated, "that each branch of a bank is a separate entity, in no way concerned with the accounts maintained by depositors in other branches or at a home office." Cronan v. Schilling, 100 N.Y.S. 2d 474, 476 (N.Y. Co. Sup. Ct. 1950), aff'd, 282 A.D. 940, 126 N.Y.S. 2d 192 (1st Dept. 1953), app. denied, 283 A.D. 655 127 N.Y.S. 2d 809 (1st Dept. 1954) (citations omitted). (emphasis added).

The "separate entity" rule in New York was effectively discarded more than 20 years ago as a result of the holding by the District Court for the Southern District of New York in the case of Digitrex v. Johnson, 491 F. Supp 66 (S.D.N.Y. 1980), where the Court took "judicial notice of the fact that the operations at most if not all New York City commercial banks...have become largely computerized... Consequently it is clear that the argument set forth in 1950 in Cronan is no longer persuasive." 491 F.Supp at 67.

In his December 4 Memorandum, Judge Wexler noted that Cronan was premised upon an outdated and inaccurate view of actual banking practices:

> this rule of law which was described as "well-established" in 1950, seems outdated in light of current banking transactions. There is no question that modern banking makes Plaintiff's funds available to him at any branch in the country and likely, the world. The "endless confusion" feared by Cronan would not likely ensue if Plaintiff saw fit to call upon any given branch of Wachovia to perform a financial transaction on any given day. (Ex. "9", pg. 10)

Accordingly, Judge Wexler held that "possibly decisive of the issues here, is the open issue of the 'location' of the assets restrained… It can certainly be argued that such assets are located both everywhere and nowhere." (Ex. "9", pg. 9). Therefore, Judge Wexler held in relevant part, as follows:

> Proper disposition of Plaintiff's claims requires the court to engage in fact finding as to the particular banking procedures utilized by Wachovia in making funds available to Plaintiff. While the court may not declare the single entity rule to be ineffective in all cases, there is a question as to whether it should be applied in this case. The viability of Plaintiff's claim of an unconstitutional out of state attachment may well turn on this issue.

("9", pg. 11).

Following the ruling in Digitrex, supra, "New York Courts have determined the validity of the service of restraining notices and subpoenas on a case by case basis in relation to a bank's existing computer operations and the burden imposed by compliance." Carrick Realty Corp. v. Flores, 157 Misc. 2d 868 at 874, 598 NYS 2d 903 (N.Y. City Civ. Ct. 1993). See, S&S Machinery Corp. v. Manufacturers Hanover Trust Co., 219 A.D.2d 249, 683 N.Y.S.2d 953, 955-96 (1st Dept. 1996) (holding that service of a restraining notice on a bank's "main office," rather than the office which held the judgment debtor's property, was legally sufficient).

Wachovia, like most large multi-state banks, maintains a centralized computer database which allows a depositor, such as plaintiff, to electronically access his account twenty-four hours a day from virtually anywhere in the world.

The issue raised by Judge Wexler concerning the location of the funds in the McCarthy Account has been resolved. Specifically, the Kooklin Affidavit conclusively establishes that once an account (such as the McCarthy Account) is opened at Wachovia, the depositor's funds are available to the depositor by any number of means (e.g. on-line, in person, ATM, etc.) from literally anywhere in the United States. (Kooklin Aff. at ¶s 8-13).

When a customer with multi-state contacts, such as plaintiff, chooses a national bank such as Wachovia, which allows its depositors to access their accounts and conduct banking transactions across state lines, the customer must accept that such bank has centralized operations to accommodate its presence in multiple states. In fact, plaintiff admitted that he was aware that Wachovia had offices in New York when he opened the McCarthy account in Florida. (Ragone Aff.-Ex. "11", pg.11).

Consequently, the McCarthy Account was not "located" in Florida or any one particular state, and thus, the separate entity rule is simply not applicable. The "viability of Plaintiff's claim of an unconstitutional out of state attachment" has been finally resolved in favor of Wachovia.

Count I of plaintiff's Second Amended Complaint should therefore be dismissed.

## POINT IV

## WACHOVIA, AS A GARNISHEE, HAS NO DUTY TO DETERMINE THE VALIDITY OF A RESTRAINING NOTICE AND IS NOT LIABLE FOR ANY ALLEGEDLY IMPROPER RESTRAINT

New York law provides that plaintiff's remedy for any wrongful restraint is against the creditor and not against the garnishee, such as Wachovia. A garnishee is entitled to rely upon the validity of legal process served upon it by a judgment creditor. No obligation is imposed by New York law upon a garnishee to determine the underlying validity of a Restraining Notice prior to implementing a restraint. Rather, as observed by the Appellate Division, First Department:

> "the garnishee's compliance with CPLR 5209 is a safe harbor that pre-empts the judgment debtor's common-law claim that the garnishee should have investigated the validity of the execution. Under CPLR 5232(a), where, as here, the judgment creditor specifies the property to be levied upon, it is the creditor and not the garnishee who is liable for damages to the actual owner. CPLR 5232(c) requires the sheriff not the garnishee, to give notice."

Chin Sung Yu v. Riggs Nat. Bank of Washington, D.C., 248 A.D.2d 235, 235, 670 N.Y.S.2d 187, 187 (1st Dept. 1998) (emphasis added). See also, Jonas v. Citibank, NA, 414 F.Supp. 2d 411 (S.D.N.Y. 2006) (court dismissed action filed against garnishee bank for bank's compliance with a writ of execution with respect to an account which contained social security funds). Cf, Granger v. Harris, 2007 WL 1213416 (E.D.N.Y. 2007) (garnishee bank's motion to dismiss customer's complaint was denied where bank turned account funds over to judgment creditor after being advised by depositor that funds included Social Security Disability payments).

New York's CPLR 5209, "Discharge of Garnishee's Obligation", provides as follows:

> A person who, pursuant to an execution or order, pays or delivers, to the judgment creditor or a sheriff or receiver, money or other personal property in which a judgment debtor has or will have an interest, or so pays a debt he owes the judgment debtor, is discharged from his obligation to the judgment debtor to the extent of the payment or delivery.

As held by the Court in Chin Sung Yu, 248 A.D.2d at 235, a judgment debtor's claims against a garnishee, such as Wachovia, for wrongful restraint or execution are precluded by CPLR §§ 5209 and 5232. These rules, founded in logic and common sense, assign responsibility for damages allegedly caused thereby on the party issuing the process.

Plaintiff's suit against Wachovia, rather than the judgment creditor, is therefore improper since "[a] bank served with a restraining notice pursuant to CPLR § 5222 has no discretion in deciding whether to honor the notice and may be held liable for damages to a judgment creditor, … for not complying with the notice. It is the responsibility of the judgment debtor to arrange to

release a restrained account." Johnson v. Chemical Bank, 1996 WL 706893 4 (S.D.N.Y.1996) (citing, Mazzuka v. Bank of North America, 53 Misc. 2d 1053, 280 N.Y.S.2d 495 (N.Y. City Civ. Ct. 1967)).

If plaintiff believed he had been aggrieved by the Restraining Notice, his remedy was available under CPLR §5239, which provides that: "any interested person may commence a special proceeding against the judgment creditor… to determine rights to the property or debt", or under CPLR § 5240 which provides that, upon motion, the court can deny, limit, extend or otherwise modify the use of judgment enforcement procedures. Prior to the January 1, 2009 amendments to CPLR Article 52,[3] section 5240 was the statutory mechanism used to enforce the judgment debtor's rights to "exempt" funds such as Social Security monies. See, Lincoln Financial Services v. Miceli, 17 Misc.3d 1109(A), 851 N.Y.S.2d 58 (N.Y. Dist. Ct. 2007). Yet, while those remedies were available to plaintiff, he failed to utilize such, nor did he ever contest the validity of the underlying judgment.

In a desperate attempt to escape the ruling made by the Court of Appeals in the recent case of Koehler v. Bermuda, plaintiff attempts to assert that CPLR Article 52 is unconstitutional to the extent it contains no territorial limitation. As addressed herein and in Point II, supra, plaintiff's claim has no merit. However, assuming arguendo, that CPLR Article 52 were to be subsequently deemed invalid, Wachovia still could not, and would not, have any liability to plaintiff. In essence, by making its claims as to the constitutionality of CPLR Article 52, plaintiff

[3] Effective January 1, 2009, various sections in Article 52 of the CPLR were amended. For example, additional procedures have been provided to afford an aggrieved debtor an opportunity to obtain the release of funds. However, the onus and liability for wrongful restraint or garnishment still remains on the judgment creditor, not a garnishee (See, e.g., CPLR § 5222-a(c) "Where the executed exemption claim form sent to the judgment creditor or support collection unit is accompanied by information demonstrating that all funds in the account are exempt, the judgment creditor or support collection unit shall… instruct the banking institution to release the account, and the restraint shall be deemed void…. If the judgment creditor or support collection unit fails to act in accordance with this subdivision, the judgment creditor or support collection unit shall be deemed to have acted in bad faith and the judgment debtor may seek a court award of the damages, costs, fees and penalties…") (emphasis added).

would purport to hold a third party garnishee liable for compliance with existing state law, a result which is not sanctioned by any law.

The argument made by plaintiff against Wachovia is essentially the same made by an attachment debtor in the case of Hicks v. Midwest Transit, 531 F.3d 467 (7th Cir. 2008). In Hicks, a debtor sued his broker for complying with an order of attachment, which attachment was later invalidated (because the attachment creditor had failed to post a bond). The 7th Circuit held that a garnishee could not liable for complying with a facially valid court order. The debtor's claims that the attachment was invalid since the debtor had not been served with same, or the creditor had failed to post a bond, had no bearing on its claims against the garnishee. "Given the complex nature of the legal issues surrounding appropriate service of process and personal jurisdiction, we do not believe it would be reasonable to force the recipient of an attachment order-which bears all indicia of legitimacy-to engage in an independent investigation for potential underlying legal deficiencies." Hicks v. Midwest Transit, Inc., 531 F.3d 467, 473 (7th Cir. 2008)

Wachovia, as a garnishee, was not under a duty to plaintiff, either by statute, caselaw or agreement, to investigate the validity of the Restraining Notice served by Harris. Accordingly, Count I of the Plaintiff's Second Amended Complaint, which alleges that Wachovia "should have known" that the Restraining Notice was not valid, should also be dismissed.

## POINT V
## THE ISSUES BETWEEN PLAINTIFF AND WACHOVIA ARE CONTRACTUAL IN NATURE AND NO CONSTITUTIONAL DIMENSIONS EXIST

**a. Wachovia is not a state actor and its acts vis a vis plaintiff were contractual in nature.**

In his December 4 Memorandum, Judge Wexler held that "(a)mong those issues that might be dispositive of the claim against the Bank is the threshold issue of state action. The court

notes that Plaintiff's amended complaint, which sets forth little in support of the allegation that the Bank acted under color of state law, barely passes the threshold in the context of this motion." (Ex. "9", pg. "8"). Indeed, in his Second Amended Complaint, plaintiff asserts that defendant Harris, and not defendant Wachovia acted under color of State Law.

The relationship between Plaintiff and Wachovia is not fiduciary in nature, but rather, is a debtor creditor relationship based on a written contract, namely the parties' Deposit Agreement. Carl v. Republic Security Bank, 282 F. Supp. 2d 1358 (S.D. Fla. 2003). Under Florida Law, when the account at issue was opened, the "funds held in a checking account are regarded as property of the bank on which the depositor merely has a claim." In re: Cravey & Associations Inc., 109 B.R. 472 (Bkr. M.D. Fla. 1989).

Wachovia's acts in restraining the McCarthy Account pursuant to the terms of the Deposit Agreement were not those of a "state actor" and not part of any collusive attempt to have the judgment creditor gain control of plaintiff's assets. Unlike the situation in Granger v. Harris, 2007 WL 1213416 (E.D.N.Y. 2007), Wachovia did not turn over Plaintiff's funds to the judgment creditor. Rather, Wachovia simply restrained the funds, notified Plaintiff of the receipt of legal process, and also notified the parties that Wachovia would not turn over Plaintiff's funds without a court order.

Wachovia's acts in restraining the McCarthy Account therefore simply do not have the constitutional dimension which Plaintiff strives to manufacture. As one federal court has aptly held:

> The Plaintiff claims that the refusal of the defendant Beverly Bank to release the money the Plaintiff deposited in the defendant bank violated the Plaintiff's 5th, 7th and 14th Amendment rights…. . Another affidavit states that this savings account is under restraint by the defendant Beverly Bank pending the payment of fees… This is clearly not the type of taking or restraint of property, denial

> of due process, equal protection or constitutional right which should be entertained by the federal courts for protection of the 5th, 7th and 14th Amendment rights. FN** See, Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).
>
> FN** The protection offered by the 15th Amendment is only against the acts of states and does not apply to the acts of individuals. Virginia v. Rives 100 U.S. 313, 25 L.Ed. 667 (1880); Hodges v. United States, 203 U.S. 1, 27 S.Ct. 6, 51 L.Ed. 65 (1906); Snowden v. Hughes, 132 F.2d 476 (7th Cir. 1943).

Ehrlich v. Federal Deposit Insurance Corp , 357 F.Supp. 196, 198 (D.C.Ill.1973) (emphasis added).

Since Wachovia was not, and is not a state actor, which plaintiff's counsel now seemingly admits, but merely a reactor, responding to routine and presumptively valid legal process served upon it by a judgment creditor, Wachovia did not violate any constitutional rights possessed by Plaintiff.

**b. No Constitutional Violation Occurs When A Bank Honors Legal Process Arising Under New York's CPLR § 5222**

The Second Circuit Court of Appeals, in McCahey v. L.P. Investors, 774 F.2d 543 (2d Cir.1985) has ruled that no constitutional infirmity is inherent in the [notice provisions of the] post-judgment enforcement provisions of CPLR 5222.

In contrast, the case relied upon by plaintiff in its opposition to Wachovia's pre-answer motion to dismiss, namely Fuentes v. Shevin 407 U.S. 67, 96, 92 S.Ct. 1983, 2002 (1972), involved challenges to both Florida's and Pennsylvania's pre-judgment replevin statutes. Specifically, the Supreme Court in Fuentes observed that: "Neither statute provides for notice to be given to the possessor of the property, and neither statute gives the possessor an opportunity to challenge the seizure at any kind of prior hearing."

Fuentes is therefore readily distinguishable from the instant case. The Court in Fuentes

ruled that the Florida and Pennsylvania pre-litigation, pre-judgment, replevin statutes were unconstitutional because neither required any notice or opportunity to be heard prior to seizure of the debtors' property.

Conversely, in the instant case, a lawsuit was commenced and judgment entered against James J. McCarthy in the Collection Action prior to any restraint of his funds by Harris. There is a presumption that plaintiff had notice of such action and an opportunity to defend that action. Further, as noted above, the constitutionality of CPLR § 5222 post-judgment notice provisions has been upheld by the Second Circuit in McCahey v. L.P. Investors, supra. Accordingly, the holding in Fuentes is inapposite to this case.

Rather, plaintiff's claims under Count I and Count IV of the Second Amended Complaint concerning Wachovia's compliance with the CPLR § 5222 restraining notice served by Harris are strikingly similar to the claims unsuccessfully advanced against a garnishee bank in Huggins v. Pataki, 2002 WL 1732804 (E.D.N.Y.2002). In Huggins, the plaintiff alleged that the garnishee bank's "compliance with New York's garnishment statute, when it knew or should have known that Huggins's account was exempt from garnishment, violated his due process rights under the Fourteenth Amendment of the United States Constitution." This Court in Huggins, supra, flatly rejected such claims, holding that McCahey v. L.P. Investors, supra, 774 F.2d 543 (2d. Cir. 1985), "is binding authority" with respect to the constitutionality of New York's CPLR 5222. 2002 WL 1732804 at *4.[4]

Accordingly, Counts I and IV of plaintiff's Second Amended Complaint should be dismissed.

[4] In his 2nd Amended Complaint, plaintiff generally refers to a $100 processing fee charged by Wachovia in connection with its processing and handling of the Restraining Notice. While Plaintiff does not specifically assign any of his causes of action to such fee, it should be noted that the plaintiff in Huggins v. Pataki, supra, also contested a $100 processing fee charged by the garnishee bank (HSBC), and this Court rejected such claim holding that , "the processing fee is governed by ordinary contract principles." Huggins v. Pataki 2002 WL 1732804 at 5.

**POINT VI**
**FEDERAL LAW PRE-EMPTS THE**
**PLAINTIFF'S CLAIMS IN THIS CASE**

**A. The History and Framework of National Bank Regulation**

National banks are creatures of federal law, established through the enactment in 1864 of the National Bank Act, 12 U.S.C. § 21 et seq. (2001). At that point in time, Congress was concerned that the national banking system it was creating would be undermined by unfriendly state legislation and interference in the aftermath of the Civil War. Beneficial National Bank v. Anderson, 539 U.S. 1, 10 (2003) ("Uniform rules limiting the liability of national banks and prescribing exclusive remedies for their overcharges are an integral part of a banking system that needed protection from 'possible unfriendly state legislation'"); Tiffany v. Nat'l Bank of Missouri, 85 U.S. (18 Wall.) 409, 413 (1874) (finding that Congress wanted to protect national banks from the "hazard of unfriendly legislation by the States").

One of the enumerated powers expressly granted by Congress to national banks included that which "shall be necessary to carry on the business of banking …by receiving deposits…." 12 U.S.C. §24 (Seventh) (2001). Congress then expressly delegated authority to the Office of the Comptroller of the Currency ("OCC"), an agency within the U.S. Department of the Treasury, for the oversight, supervision and regulation of national banks, including the creation and maintenance of deposit accounts. See, 12 U.S.C. §481 (2001).

In exercising this regulatory and supervisory control over national banks, the OCC has promulgated numerous regulations. In particular, the OCC has addressed the issue of establishing and collecting bank fees (such as the $100 fee assessed by Wachovia for processing the Restraining Notice), as follows:

§7.4002 National Bank Charges.

> (a) *Authority to impose charges and fees*. A national bank may charge its customers non-interest charges and fees, including deposit account service charges.
>
> (b) *Considerations*…
>
> (2) the establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles.
>
> …
>
> (d) *State Law*. The OCC applies pre-emption principles derived from the United States Constitution as interpreted through judicial precedent, when determining whether state laws apply that purport to limit or prohibit charges and fees described in this section.

12 C.F.R. §7.4002 (2004).

Furthermore, decisions of the Supreme Court underscore the pre-emptive nature of federal law in regard to the governance of national banks. "National banks are instrumentalities of the Federal government, created for a public purpose, and as such necessarily subject to the paramount authority of the United States." Davis v. Elmira Savings Bank, 161 U.S. 275, 283 (1896). "It was the intention that this statute should contain a full code of provisions upon the subject, and that no state law or enactment should undertake to exercise the right of visitation over a national corporation." Guthrie v. Harkness, 199 U.S. 148, 159 (1905).

> Congress has provided a symmetrical and complete scheme for the banks to be organized under the provisions of the statute.
>
> …
>
> [W]e are unable to perceive that Congress intended to leave the field open for the States to attempt to promote the welfare and stability of national banks by direct legislation
>
> …
>
> The States can exercise no control over national banks, nor in anywise affect their operation, except so far as Congress may see proper to permit. Everything beyond this is "an abuse, because it is the usurpation of power

which a single state cannot give."

Easton v. Iowa, 188 U.S. 220, 231-32, 237 (1903) (citation omitted).

**B.      Pre-emption is Necessary Whenever State Law Conflicts With or Otherwise Impairs the Exercise of a National Bank's Powers.**

Federal pre-emption can arise in any of several situations:

> The Supremacy Clause of Art. VI of the Constitution provides Congress with the power to pre-empt state law.  Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law…when there is outright or actual conflict between federal and state law…where compliance with both federal and state law is in effect physically impossible…where there is implicit in federal law a barrier to state regulation…where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the State to supplement federal law…or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

Louisiana Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 368-69 (1986) (internal citations omitted).

At least two of the bases for pre-emption enumerated in Louisiana Pub. Serv. Com. are present here.  First, there is an irreconcilable conflict between the Plaintiff's interpretation of state law and the federal law applicable in this case.  It is impossible to exercise the federally granted right to collect bank fees without transgressing the Plaintiff's apparent view of state law.  Second, any attempted regulation of national bank fees or and uniform garnishment procedures by an individual state represents an obstacle to the accomplishment and execution of the objectives of both the National Bank Act and the implementing regulations thereunder.

A relatively recent Supreme Court case held that the National Bank Act pre-empts conflicting state laws.  In Barnett Bank v. Nelson, 517 U.S. 25 (1996), the court held that, as a general rule, grants of authority under the National Bank Act are "not normally limited by, but rather ordinarily pre-empt[], contrary state law." 517 U.S. at 32 (citations omitted).  The Supreme Court therefore held that a Florida statute purporting to restrict insurance sales by banks

was pre-empted by the National Bank Act. See also, Watters v. Wachovia Bank, N.A., 550 U.S. 1, 127 S.Ct. 1559 (2007)(finding that state law may not hinder or curtail a national bank's operations).

Other recent decisions by lower federal courts are in accord on the issue of pre-emption. See, e.g., Silvas v. E*Trade Mortgage Corp., 514 F.3d 1001 (9th Cir. 2008) (finding state consumer protection statute preempted by federal law); Bank of America v. City & County of San Francisco, 309 F.3d 551 (9th Cir. 2002), cert denied, 123 S. Ct. 2220 (2003)(finding state law regulation of ATM fees preempted by 12 C.F.R § 7.4002). See also, Wells Fargo Bank, N.A. v. James, 321 F.3d 488 (5th Cir. 2003)(finding pre-emption of a state law that purported to restrict the charging of bank fees); Bank One v. Guttau, 190 F.3d 844 (8th Cir. 1999), cert. denied, 529 U.S. 1087 (2000)(finding attempted state regulation of national bank ATM's to be pre-empted); Tombers v. FDIC, 2009 WL 3170298 (S.D.N.Y. Sept. 30, 2009)(preemption found when attempting to use New York's GBL § 349 to contest bank fees); Cedeno v. Indymac Bancorp, Inc., 2008 WL 3992304 (S.D.N.Y. Aug. 26, 2008)( finding New York's GBL § 349 preempted by the Home Owner's Loan Act and 12 C.F.R. § 560.2 because "the New York statute as applied in this case more than incidentally affects federal thrift lending operations."); Fultz v. World Savings & Loan Ass'n, 571 F. Supp.2d 1195 (W.D. Wash. 2008) (finding preemption of state statute by the federal Home Owner's Loan Act)[5]; Mincey v. World Savings Bank, FSB, 2008 WL 3845438 (D.S.C. Aug. 15, 2008) (finding preemption of state statute by federal law); Metrobank v. Foster, 193 F.Supp.2d 1156 (S.D. Iowa 2002) (finding state restrictions on ATM

5 The *Fultz* case involved state statutory claims against a federal savings bank as well as a national bank. The court found preemption under both the National Bank Act (under OCC jurisdiction) and the Home Owner's Loan Act (under OTS jurisdiction), noting "the striking similarities between OCC's preemptive regulation and the preemption regulation issued by the Office of Thrift Supervision under the Home Owner's Loan Act ("HOLA"). The similarities are not accidental." *Fultz v. World Savings & Loan Ass'n*, 2008 WL 4131512 at *2 (W.D. Wash. Aug. 18, 2008). (The *Fultz* court issued two separate opinions, only one of which was reported in the Federal Supplement.)

fees pre-empted by 12 U.S.C. §24 (Seventh) and 12 C.F.R. §7.4002).

Thus, the courts that have considered situations similar to the one presented in this case – *i.e.*, where a party claims that a state statute or common law purports to restrict or prohibit the charging of fees by a national bank – have uniformly held that under the Supremacy Clause of the United States Constitution, any purported state law restriction on national bank fees is completely pre-empted by federal law.

**C. Wachovia's Garnishment Processing Fee is Authorized Under the National Bank Act.**

In the present case, with regard to the establishment and collection of bank fees, Congress granted to Wachovia "all such incidental *powers* as shall be necessary to carry on the business of banking … [including those related to] receiving deposits." 12 U.S.C. §24 (Seventh) (2001) (emphasis added). The OCC further granted to each national bank the authority to "charge its customers non-interest charges and fees" while declaring that the "establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles." 12 C.F.R. §7.4002(a) & (b)(2) (2004). Thus, both the statute and the implementing regulations define and grant authority to Wachovia to charge a processing fee in conjunction with responding to account garnishments and levies.

To the extent the plaintiff claims that the $100 processing fee at issue here somehow violates New York law, this claim lies in direct conflict with a federally created power. New York courts have recognized that when such a conflict exists, state law is pre-empted.

> If Congress evidences an intent to occupy a given field, any state law falling within that field is pre-empted. If Congress has not entirely displaced state regulation over the matter in question, state law is still pre-empted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, or where the state

> law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.

Cammon v. City of New York, 260 A.D.2d 70, 73-74, 700 N.Y.S.2d 110, 113 (1st Dept. 1999), aff'd, 95 N.Y.2d 583, 721 N.Y.S.2d 579, 744 N.E.2d 114 (2000)(internal quotation marks omitted). See also, Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 117 (2d Cir. 2001)("The normal rules of pre-emption…require us to apply federal law in the face of a conflict between state and federal law even where the federal law does not explicitly manifest an intent to be pre-emptive…").

Recently, in Monroe Retail, Inc. v. Charter One Bank, N.A., 2007 WL 2769645 (N.D. Ohio September 18, 2007), a plaintiff judgment creditor argued that the national bank garnishee could not, under Ohio law, deduct a processing fee from the account before turning over the proceeds under a garnishment levy. The court disagreed, finding that "any interference with a national bank's right to assess service fees is necessarily pre-empted whether it directly affects a depositor's account, or indirectly affects the amount a garnishor will receive." 2007 WL 2769645 at *9. The court's finding of federal pre-emption was specifically based on 12 U.S.C. § 24 (Seventh) and 12 C.F.R. § 7.4002(a), the same provisions Wachovia invokes here.

The plaintiff effectively seeks to rescind the power to establish and collect ancillary service fees granted by Congress to national banks. "[W]here a state statute *interferes with* a power which national banks are authorized to exercise, the state statute irreconcilably conflicts with the federal statute and is pre-empted by operation of the Supremacy Clause." Wells Fargo Bank, N.A. v. James, supra, 321 F.3d at 491-92 (emphasis added). The only way to resolve this conflict is to recognize pre-emption by federal law on this point. Thus, to the extent the plaintiff's claims challenge Wachovia's assessment of a $100 processing fee, those claims are completely pre-empted.

**D. Wachovia's Central Garnishment Processing System is Protected by the National Bank Act**

Implicit in plaintiff's claims is a challenge to Wachovia's practice of processing all garnishments and levies in one central location for all of its accounts nationwide. Apparently, plaintiff would prefer to see garnishments served and processed exclusively at the particular branch bank where a judgment debtor's account happened to be opened, and even then only after being domesticated through a state court in the jurisdiction in which that branch is located. (See, e.g., Second Amended Complaint ¶¶ 8, 30, 37). While the plaintiff's nostalgic view of his local neighborhood bank may have been valid half a century ago, it is completely out of step with the realities of modern banking practice as addressed earlier in Points I & II., supra.

With 3400 branches in 21 states, Wachovia conducts a staggering number of banking transactions throughout the entire country each day. Serving over 15 million customers, and handling in excess of 40,000 items every month requires the implementation of uniform, efficient internal procedures. One such procedure at Wachovia involves the centralized processing of these garnishments. Plaintiff ignores the obvious practical efficiency of this process and seeks to rescind his express written consent to the handling of garnishments in this way. [See, Point I, supra.]. Whatever difficulties plaintiff may have with his creditors, he should not be heard in this Court to advocate the abandonment of a uniform, harmonious nationwide garnishment processing procedure in favor of one which turns back the clock to the days of bank tellers with eyeshades and armbands.

"State attempts to control the conduct of national banks are void if they conflict with federal law, frustrate the purposes of the National Bank Act, or *impair the efficiency of national banks to discharge their duties*." Bank of America v. San Francisco, supra, 309 F.3d at 561 (emphasis added). The plaintiff here, seemingly unfamiliar with the necessities of modern

banking, seeks to impair the efficiency of Wachovia's garnishment processing system by his claim that it violates state law. This is precisely the disruptive impact on uniform national banking that the doctrine of federal pre-emption is recognized to prevent. For this reason, as well, the plaintiff's state law claims against Wachovia are all pre-empted by overarching federal law.

**CONCLUSION**

Based on the authorities cited above, Wachovia respectfully requests that its instant motion for summary judgment be granted in all respects, and that plaintiff's Second Amended Complaint be dismissed as against Wachovia, together with other appropriate and further relief under the circumstances.

Dated: New York, New York
April 23, 2010

Respectfully submitted,

ROSNER NOCERA & RAGONE, LLP
Attorneys for Defendant Wachovia Bank, National Association

By: \S\Peter A. Ragone
John A. Nocera
Peter A. Ragone
John P. Foudy
110 Wall Street - 23rd Floor
New York, New York 10005
(212) 635-2244

TREANOR POPE & HUGHES
Attorneys for Defendant Wachovia Bank, National Association

By: \S\Russell J. Pope
Russell J. Pope
29 W. Susquehanna Avenue
Towson, Maryland 21204
(410) 494-7777