UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
JAMES J. MCCARTHY,

Plaintiff,

-against-

WACHOVIA BANK, N.A., MEL S. HARRIS, MEL HARRIS AND ASSOCIATES, LLC.,

Case No.: 08-cv-01122-LDW-ETB

Defendants.
--------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT WACHOVIA BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

ROSNER NOCERA & RAGONE, LLP
110 Wall Street, 23rd Floor
New York, New York 10005
(212) 635-2244

-and-

TREANOR POPE & HUGHES
29 W. Susquehanna Avenue
Towson, Maryland 21204
(410) 494-7777

Attorneys for Defendant Wachovia Bank, N.A.

# TABLE OF CONTENTS

**PAGE**

**TABLE OF AUTHORITIES**…………………….………………………………………...ii

**PRELIMINARY STATEMENT**…………………………………………………..……1

**STATEMENT OF FACTS**……………………………………………………..…..1

**POINT I:** THE DEPOSIT AGREEMENT WITH PLAINTIFF BARS PLAINTIFF'S ACTION……………………………………….…………1

a. The Deposit Agreement does not Constitute a Waiver of Plaintiff's Constitutional Rights………………………………….….1

b. Wachovia had no duty to investigate the validity of the Restraining Notice………………………..……………………………4

**POINT II:** WACHOVIA'S ACTIONS DID NOT DEPRIVE PLAINTIFF OF ANY STATE COURT REMEDY..…………………………………………4

**POINT III:** NEW YORK COURTS CAN RESTRAIN PROPERTY OUTSIDE OF NY………………………………………………………………....…5

**POINT IV:** WACHOVIA WAS NOT A STATE ACTOR……..……..………………………8

**POINT V:** FEDERAL LAW PRE-EMPTS THE PLAINTIFF'S CLAIMS IN THIS CASE…………………………………………………………...10

A. The Fact that GBL § 349 Does Not Specifically Target National Banks is Irrelevant ………………………………………................11

B. Pronouncements by the Office of Thrift Supervision Support Preemption in this Case ……………………..,,…………………………11

C. The Plaintiff's Invocation of the Implied Covenant of Good Faith and Fair Dealing Does Not Change the Preemption Analysis ……14

**CONCLUSION**………………………………………………………………………15

# Table of Authorities

## CASES


| | |
|---|---|
| Bank of America v. City & County of San Francisco, 309 F.3d 551, 559 (9th Cir. 2002), cert. denied, 538 U.S. 1069 (2003) | 10,11 |
| Barnett Bank v. Nelson, 517 U.S. 25, 32 (1996) | 10 |
| CSX Transportation, Inc. v. Easterwood, 507 U.S. 658 (1993) | 10 |
| Erie Telecom, Inc. v. City of Erie, Pa. 853 F.2d 1084 (3rd Cir.1988) | 3 |
| Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983 (1972) | 2 |
| Gillman v. Chase Manhattan Bank, 73 N.Y.2d 1, 11, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988). | 1 |
| Gryphon Domestic VI v. APP International Finance, 41 A.D.3d 25, 836 N.Y.S.2d 4 (1st Dept. 2007) | 5,6 |
| Haines v. General Motors Corp. 603 F.Supp. 471, 477 (D.C.Ohio 1983) | 9 |
| Harris v. Balk 198 U.S. 215, 226, 25 S.Ct. 625, 628 (U.S.1905) | 7 |
| Huggins v. Pataki, 2002 WL 1732804 (E.D.N.Y.2002) | 3 |
| Johnson v. Chemical Bank 1996 WL 706893, 4 (S.D.N.Y. 1996) | 9 |
| Kennedy v. Kelly, 295 Ark. 678, 680-681, 751 S.W.2d 6, 7 - 8 (Ark.1988) | 4 |
| Koehler v. Bank of Bermuda, 12 N.Y.3d 533, 911 N.E.2d 825, 883 N.Y.S.2d 763 (2009) | 5,6 |
| Louisiana Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 368-69 (1986) | 11 |
| Maines Paper and Food Service Inc. v. Adel 256 A.D.2d 760, 761, 681 N.Y.S.2d 390, 391 (3 Dept. 1998) | 1 |
| Mary v. Lewis, 399 Mich. 401, 416, 249 N.W.2d 102, 108 (Mich. 1976) | 4 |
| Mayers v. New York Community Bancorp, Inc. 2005 WL 2105810 (E.D.N.Y. 2005) | 9 |
| McCahey v. L.P. Investors, 774 F.2d 543 (2d Cir.1985). | 2,3 |
| Morris v. New York City Employees' Retirement System, 129 F.Supp.2d 599 (SDNY 2001) | 3 |
| National Union Fire Ins. Co. of Pittsburgh, Pa. v. Advanced Employment Concepts, Inc., 269 A.D.2d 101, 703 N.Y.S.2d 3 (1st Dep't, 2000) | 6 |
| New Jersey v. New York City, 283 U.S. 473, 482, 51 S.Ct. 519, 521, 75 L.Ed. 1176 (1931) | 7 |
| U.S. v. First Nat. City Bank 379 U.S. 378, 384, 85 S.Ct. 528, 531 (1965) | 7 |
| Wachovia Bank National Association v. Anoplate Corp. Sup. Ct. Bronx Co. (2004) | 8 |
| Watters v. Wachovia Bank, N.A., 550 U.S. 1, 11 (2007) | 10 |


## STATUTES and REGULATIONS


| | |
|---|---|
| 42 U.S.C. § 1983 | 9 |
| 12 C.F.R. § 560.2(a) | 13 |
| 12 C.F.R. § 560.2(c) | 13 |
| 12 C.F.R. § 7.4009 | 10 |
| OTS Final Rule, 61 Fed. Reg. 50951, 50966-67 (September 30, 1996) | 13 |
| CPLR § 5018(a) | 4 |
| CPLR § 5222 | 3 |
| CPLR § 5239 | 5 |
| CPLR § 5240 | 5 |
| GBL § 349 | 10,11,14 |

## PRELIMINARY STATEMENT

Defendant Wachovia Bank, N.A. (hereinafter "Wachovia"), respectfully submits this reply memorandum of law: (a) in reply to Plaintiff's memorandum of law in opposition; and (b) in further support of Wachovia's instant motion for an Order pursuant to Fed. R. Civ. P. 56, granting Wachovia summary judgment and dismissing the plaintiff's Second Amended Complaint as against Wachovia.

## STATEMENT OF FACTS

The Court is respectfully referred to the Statement of Facts contained in Wachovia's underlying memorandum of Law in Support, dated April 23, 2010 for a full rendition of the facts pertinent to this motion.

## POINT I
## THE DEPOSIT AGREEMENT WITH PLAINTIFF BARS PLAINTIFF'S ACTION

Plaintiff claims he is not bound by Deposit Agreement (i.e.: Ex. "2") simply because the Bank employee who assisted him in opening the McCarthy Account did not explain certain provisions to him. However, it is well settled that "[i]n the absence of fraud, duress or some other wrongful act by a party to a contract, a signer of an agreement is deemed to be conclusively bound by its terms whether or not he or she read it," Maines Paper and Food Service Inc. v. Adel 256 A.D.2d 760, 761, 681 N.Y.S.2d 390, 391 (3 Dept. 1998) *see also*, Gillman v. Chase Manhattan Bank, 73 N.Y.2d 1, 11, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988). [1]

### a. The Deposit Agreement does not Constitute a Waiver of Plaintiff's Constitutional Rights.

Plaintiff claims that his failure to read or understand certain portions of the Deposit

[1] Plaintiff also asserts (i.e. at p.2-3 of his Memorandum in Opposition) that the Court found issues of fact existed as to whether plaintiff is bound by the Deposit Agreement. However, the Court's observation was made in the context of Wachovia's pre-answer motion to dismiss, prior to discovery. Plaintiff has since admitted at deposition (i.e. Ex. 14 at 14) that he received a copy of the Deposit Agreement.

Agreement renders certain provisions unenforceable, since such provisions allegedly constitute a waiver of his constitutional due process rights. However, the pertinent provisions of the Deposit Agreement simply provide that when Wachovia has been served with legal process as a garnishee, the Bank is not responsible to contest any such legal process on plaintiff's behalf, or to determine the validity of such legal process. There was no "wavier" of a "constitutional right" held by plaintiff. Rather, the only possible "waiver" that could possibly be read into the Deposit Agreement provisions at issue is that Wachovia arguably waived its own rights, as garnishee, as to the form and location of service of legal process upon Wachovia.

The cases advanced by plaintiff on this point are readily distinguishable. The primary case relied upon by plaintiff is Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983 (1972). In Fuentes, the Court ruled unconstitutional pre-judgment replevin statutes of two states. The Supreme Court in Fuentes noted that: "Neither [pre-judgment replevin] statute provides for notice to be given to the possessor of the property, and neither statute gives the possessor an opportunity to challenge the seizure at any kind of prior hearing.". 407 U.S. at 69-70, 92 S.Ct. at 1988-1989.

Wachovia here is merely a garnishee stakeholder reacting to a post-judgment restraining notice, not a creditor seeking the pre-judgment seizure of plaintiff's property. Moreover, the Fuentes Court only looked to the contract between the debtors and the replevin creditors after striking down the pre-judgment replevin statutes at issue. In stark contrast, here the constitutionality of New York's CPLR Article 52 post-judgment enforcement scheme at issue herein has already been upheld by the 2nd Circuit Court of Appeals. McCahey v. L.P. Investors, 774 F.2d 543 (2d Cir.1985).

In McCahey v. L.P. Investors, the Second Circuit noted that the United States Supreme Court had ruled "that a judgment debtor is not constitutionally entitled to notice and a hearing

prior to a wage garnishment", viewing "the existence of the underlying judgment as sufficient 'notice of what will follow' 774 F.2d 543 at 547. The McCahey court then squarely held that *post-judgment debtors* (such as plaintiff at bar) had no constitutional entitlement to notice and a hearing prior to seizure:

> That level of procedural protection for debtors is not constitutionally required… it can hardly be required where the creditor's claim has been finally confirmed by a court… For those reasons, we agree with the great majority of courts that have considered and rejected this suggestion. *See, e.g., Dionne, 757 F.2d at 1352; Brown v. Liberty Loan Corp., 539 F.2d 1355, 1363 (5th Cir.1976); Huggins v. Deinhard, 134 Ariz. 98, 654 P.2d 32, 37 (1982); Cole v. Goldberger, Pedersen & Hochron, 95 Misc.2d 720, 410 N.Y.S.2d 950, 955-56 (1978); but see Coursin v. Harper, 236 Ga. 729, 225 S.E.2d 428, 430 (1976).*

774 F.2d at 550.

Plaintiff's allegations here are indistinguishable from the claims unsuccessfully advanced against the garnishee bank in Huggins v. Pataki, 2002 WL 1732804 (E.D.N.Y.2002), where a plaintiff alleged that the garnishee bank's compliance with a restraining notice violated his constitutional due process rights. This Court in Huggins flatly rejected such claims, holding that McCahey v. L.P. Investors, supra, 774 F.2d 543 (2d. Cir. 1985), "is binding authority" with respect to the constitutionality of New York's CPLR 5222. 2002 WL 1732804 at 4.

Plaintiff simply ignores the cases construing the validity of New York's CPLR Article 52 post judgment enforcement procedures and instead relies upon a hodgepodge of unrelated cases. For instance, plaintiff invokes Morris v. New York City Employees' Retirement System, 129 F.Supp.2d 599 (SDNY 2001), which concerned a purported waiver of the right of a government employee to seek judicial review of an employee disability claim; and Erie Telecom, Inc. v. City of Erie, Pa. 853 F.2d 1084 (3rd Cir.1988), which involved a dispute between a cable operator and the City of Erie concerning the validity of a franchise agreement and a release executed by the

cable operator in favor of the city. The situations in the cases cited by plaintiff are not remotely relevant to the issues herein and lend no support to plaintiff's argument.

**b. Wachovia had no duty to investigate the validity of the Restraining Notice**.

Plaintiff also claims in Point I(c) of his Memorandum that Wachovia should not have honored the Restraining Notice since such was allegedly defective pursuant to NY CPLR § 5018(a). However, as set forth in detail in Wachovia's underlying Memorandum of Law in support at Point IV, there is no legal duty requiring a garnishee to first determine the validity of a Restraining Notice before honoring such process.

Plaintiff's claim that Wachovia should have contested the Restraining Notice, overlooks another key point. It is well-settled that a "garnishee may not ordinarily plead a defense which concerns the debtor only, with respect to the validity of the garnishment proceedings or the creditor's claim against the debtor." Kennedy v. Kelly, 295 Ark. 678, 680-681, 751 S.W.2d 6, 7 - 8 (Ark.1988) (See also; Mary v. Lewis, 399 Mich. 401, 416, 249 N.W.2d 102, 108 (Mich. 1976)(holding that garnishee Bank has no standing to interpose the due process rights of its customer). If the plaintiff truly had a due process defense to the Harris Judgment or Restraining Notice, he had the standing to interpose that defense, not Wachovia.

## POINT II
## WACHOVIA'S ACTIONS DID NOT DEPRIVE PLAINTIFF OF ANY STATE COURT REMEDY

In his Memorandum in Opposition at Point II, plaintiff claims that Wachovia allegedly deprived plaintiff of the "opportunity to assert any jurisdictional objections he may have to the enforcement of such judgment in the sister state". (Plaintiff's Memo of Law, at p 10). However, plaintiff was not deprived of any opportunity to contest the Harris Judgment.

Plaintiff has never attempted to vacate or contest the Harris Judgment rendered against

him, even though, at the same time he admittedly received notice from Wachovia that his account was restrained (i.e., Ex. "5"), he resided in the state of New York in the same county, (i.e. Suffolk) where the judgment was rendered. Indeed, this very Court, where plaintiff brought the instant action, sits in the same county. Plaintiff's reference to the Uniform Enforcement of Judgments Act is a red herring, plaintiff could have attempted to vacate the judgment at any time, and no claimed act of Wachovia impaired his right to do so.

Further, Wachovia merely restrained plaintiff's account, and had he so chosen, plaintiff could have commenced a proceeding under NY CPLR §§ 5239 or 5240 "to determine rights to the property or debt", or "deny, limit, extend or otherwise modify the use of judgment enforcement procedures". In fact, plaintiff could have brought an action against Wachovia in *any state* in which plaintiff and/or Wachovia are located or do business, including, obviously, the State of Florida (Florida Statutes, Chapter 77). Yet, plaintiff failed to do so.

## POINT III
## NEW YORK COURTS CAN RESTRAIN PROPERTY OUTSIDE OF NY

The recent cases of Gryphon Domestic VI v. APP International Finance, 41 A.D.3d 25, 836 N.Y.S.2d 4 (1st Dept. 2007) and Koehler v. Bank of Bermuda, 12 N.Y.3d 533, 911 N.E.2d 825, 883 N.Y.S.2d 763 (2009) establish beyond any doubt that pursuant to New York's CPLR Article 52, a New York court can order the restraint or delivery of property located outside the State of New York, so long as garnishee is subject to jurisdiction in New York.

In Point III of his Memorandum of Law, plaintiff asserts that the long discarded "separate entity rule"[2] still acts to invalidate the service of legal process upon any bank location other than

[2] See Digitrex v. Johnson, 491 F. Supp 66 (S.D.N.Y. 1980), where the Court took "judicial notice of the fact that the operations at most if not all New York City commercial banks...have become largely computerized... Consequently it is clear that the argument set forth in 1950 in Cronan is no longer persuasive." 491 F.Supp at 67.

the specific "branch" office wherein a debtor's account is "maintained". For support Plaintiff attempts an end run around Gryphon and Koehler by citing to the *dissent* in Koehler and the effectively superseded case of National Union Fire Ins. Co. of Pittsburgh, Pa. v. Advanced Employment Concepts, Inc., 269 A.D.2d 101, 703 N.Y.S.2d 3 (1st Dep't, 2000).

National Union has no relevance here since this action concerns a CPLR Article 52 Restraining Notice. In Gryphon, the Appellate Division, First Department specifically limited the holding of National Union to *pre-Judgment* attachments under CPLR Article 62, in pertinent part, as follows:

> The IAS court also stated that "New York courts cannot restrain transfers of property located outside of the state." However, the case on which it relied, *Matter of National Union Fire Ins. Co. of Pittsburgh, Pa. v Advanced Empl. Concepts* (269 AD2d 101 [2000]), does not stand for that proposition. Rather, in *National Union* we held that "the court was without authority to *attach* bank accounts outside of New York . . . . In order to be subject to *attachment*, property must be within the court's jurisdiction." (*Id.* [emphasis added].) Moreover, this Court's decision in *Abuhamda* (236 AD2d at 290) demonstrates that a New York court *can* restrain transfers of property outside the state, so long as it has jurisdiction over the transferor.

Gryphon Domestic VI v. APP International Finance, 41 A.D.3d 25 at 39, 836 N.Y.S. 2d 4 at 10 (1st Dept. 2007). Accordingly, under the rule enunciated by the Court in Gryphon, which superseded National Union, a New York Court, "*can* restrain transfers of property outside the state, so long as it has jurisdiction over the transferor". Id.

In Koehler v. Bank of Bermuda, supra, the New York Court of Appeals held that "CPLR article 52 contains no express territorial limitation" 12 N.Y.3d at 539, 911 N.E.2d at 829, 883 N.Y.S.2d at 767. The Court therefore ruled that "a court sitting in New York that has personal jurisdiction over a garnishee bank can order the bank" to produce property of the debtor located outside the State of New York. Id. at 541, 831, 769 (emphasis added). In so ruling, the Court in

Koehler observed as follows:

> In short, article 52 post-judgment enforcement involves a proceeding against a person-its purpose is to demand that a person convert property to money for payment to a creditor" Id. (Emphasis added).

The Court of Appeals in Koehler therefore specifically held that to the extent a New York Court has jurisdiction over a garnishee, legal process issued by the New York Court can reach property of a judgment debtor held by the garnishee outside of the State.[3] The U.S. Supreme Court, in the case of U.S. v. First Nat. City Bank 379 U.S. 378, 384, 85 S.Ct. 528, 531 (1965) has likewise held that once a court has obtained personal jurisdiction over a national bank, such as Wachovia at bar, it can "order it to 'freeze' property under its control, whether the property be within or without the United States." U.S. v. First Nat. City Bank , supra., 379 U.S. at 384, 85 S.Ct.at 531 (citing, New Jersey v. New York City, 283 U.S. 473, 482, 51 S.Ct. 519, 521, 75 L.Ed. 1176 (1931).

The Supreme Court has long held that when a court "had jurisdiction over the garnishee", it can order the garnishee to turn over property held for the judgment debtor to a judgment creditor. Harris v. Balk 198 U.S. 215, 226, 25 S.Ct. 625, 628 (U.S.1905). The court in Harris further held that the "situs of the debt" is an immaterial concept, if a judgment debtor could compel a garnishee to pay him in a jurisdiction, then a judgment creditor can do likewise. Accordingly, the debt owed by Wachovia to plaintiff for the amount of funds on deposit in the McCarthy Account, is "located" wherever jurisdiction can be obtained over Wachovia. Since Wachovia maintained offices in New York where the Restraining Notice was issued, the

[3] Plaintiff asserts that "[n]otice to the judgment debtor of an attempt to restrain his account is implicit in Koehler" (Plaintiff's Memo of Law, at p 10)(emphasis added). In fact, as Plaintiff himself repeatedly states, Koehler v. Bank of Bermuda, 12 N.Y.3d 533, 911 N.E.2d 825, 883 N.Y.S.2d 763 (2009) involved a proceeding seeking a turnover order- which proceeding takes place *after* a restraint. In any event, Wachovia, as plaintiff admits, did give notice to plaintiff of the restraint, even though not required to do so.

indebtedness owed to is deemed there as well and hence subject to Restraint.

Finally, plaintiff completely misconstrues the case of Wachovia Bank National Association v. Anoplate Corp. Sup. Ct. Bronx Co. (2004). Contrary to plaintiff's assertions, Anoplate's facts are indistinguishable from the case at bar. Like here, a N.Y. CPLR § 5222 restraining notice was served upon Wachovia, and accordingly Wachovia restrained an account maintained by the judgment debtor-- which account had been originally opened in Connecticut. The *sole* difference between Anoplate and the instant case is that in Anoplate the depositor commenced a CPLR § 5239 proceeding to determine adverse claims, while in this case, plaintiff chose to sue in Federal court.

Plaintiff also attempts to limit the holdings in Koehler and Anoplate to instances where "all the necessary parties were parties to the proceeding before disposition of the debtor's property was determined" (Plaintiff's Memo at 9). In fact, in both Koehler and Anoplate, like the instant case, the proceedings occurred *after* the debtor's property was restrained.

Contrary to plaintiff's claim, there was no final "disposition of the debtor's property", upon the service of a restraining notice, only a restraint. Moreover, Wachovia explicitly advised Harris that Wachovia would not turn any funds over to Harris, unless required to do so by a turnover order (Ex "4"). In any event, the ultimate "disposition" of the debtor's funds in this case was the *return* of such property to the debtor when the restraining notice expired.

## POINT IV
## WACHOVIA WAS NOT A STATE ACTOR

In his Memorandum of Law at Point IV, plaintiff strenuously argues that Wachovia should be deemed a state actor, all the while failing to point to a single authority where a mere post-judgment garnishee, such as Wachovia at bar, which caught between a creditor and a debtor, has been held liable as a state actor.

In support of his claim that Wachovia acted "under color of state law", plaintiff cites Mayers v. New York Community Bancorp, Inc. 2005 WL 2105810 (E.D.N.Y. 2005). In Mayers, the Plaintiffs therein brought an action "challenging the constitutionality of New York['s]… garnishment provision for the enforcement of money judgments." 2005 WL 2105810 at 1. The court merely held that at the pre-Answer Fed. R. Civ. P. 12 motion to dismiss stage, plaintiffs had adequately pled that the defendant banks had acted under color of State Law.

Rather, on summary judgment, the caselaw in this circuit establishes that no action under 42 U.S.C. § 1983 can lie against a garnishee bank which merely, "complied with legal process when they gave plaintiff notice that his accounts were restrained" since:

> A bank served with a restraining notice pursuant to CPLR § 5222 has no discretion in deciding whether to honor the notice and may be held liable for damages to a judgment creditor…for not complying with the notice. *Mazzuka v. Bank of North America*, 280 N.Y.S.2d 495 (1967). It is the responsibility of the judgment debtor to arrange to release a restrained account.[FN2] … New York's postjudgment remedies have been found to satisfy due process requirements under the Fourteenth Amendment. *McCahey*, 774 F.2d at 549 (2d Cir. 1985).
>
> FN2. Plaintiff's remedy, if at all, may lie in a state court action under CPLR § 5239 to challenge The Bank of New York's entitlement to restrain his accounts.

Johnson v. Chemical Bank 1996 WL 706893, 4 (S.D.N.Y. 1996). (emphasis added)

In fact, Federal courts have held that bringing a 42 U.S.C. § 1983 action where as here, "the plaintiff had ample opportunity to proceed within the state courts… and elected instead to bring an action in the United States District Court against the [garnishee] whose only activity had been a response to a lawful order of the state court… is clearly vexatious, unreasonable and without foundation." Haines v. General Motors Corp. 603 F.Supp. 471, 477 (D.C.Ohio 1983).

Plaintiff has failed to cite a single authority holding that a garnishee acted under color of state law in responding to a Restraining Notice such as that at bar. Rather, plaintiff has cited one

case, Mayers, where as here, such claim survived a pre-answer motion to dismiss. As discovery has been conducted in this case, and plaintiff can not establish that Wachovia was a state actor, Wachovia submits that its motion for summary judgment should be granted.

**POINT V**
**FEDERAL LAW PREEMPTS THE PLAINTIFF'S CLAIMS IN THIS CASE**

In his Opposition to Wachovia's Motion for Summary Judgment, the Plaintiff admits that this Court's "focus is on whether a state law precludes the accomplishment and execution of the full purposes and objectives of Congress". (Plaintiff's Memo at 21). Stated otherwise, "federally chartered banks are subject to state laws of general application in their daily business *to the extent* such laws do not conflict with the letter or the general purpose of the NBA." Watters v. Wachovia Bank, N.A., 550 U.S. 1, 11 (2007)(finding preemption of state law by the National Bank Act). In particular, state deceptive trade practice statutes such as GBL § 349 will survive federal preemption only "to the extent that they only incidentally affect the exercise of national bank powers." (Plaintiff's Memo at 16, n. 11)(quoting 12 C.F.R. § 7.4009). In this case, the application of GBL § 349 advanced by the Plaintiff would more than "incidentally affect" the operations of Wachovia and therefore it necessarily is preempted.

It bears repeating that federal courts begin their legal analysis of this issue with a judicial presumption *in favor of* preemption in the national banking arena. See Barnett Bank v. Nelson, 517 U.S. 25, 32 (1996)(finding Congressionally conferred national bank powers "not normally limited by, but rather ordinarily preempting contrary state law"); Bank of America v. City & County of San Francisco, 309 F.3d 551, 559 (9th Cir. 2002), *cert. denied*, 538 U.S. 1069 (2003)("in national banking, the presumption against preemption of state law is inapplicable"). Plaintiff relies upon CSX Transportation, Inc. v. Easterwood, 507 U.S. 658 (1993) for the

general proposition that preemption is disfavored, but such reliance is misplaced since that case did not involve the National Bank Act, for which there is a presumption in favor of preemption.

**A. The Fact that GBL § 349 Does Not Specifically Target National Banks is Irrelevant.**

In his Opposition, the Plaintiff argues that his GBL § 349 claim is not preempted because "nothing contained in that law is specifically aimed or directed at any state objective in conflict with the safe and sound regulation of national banks." (Plaintiff's Memo at 16). However, whether the New York State Legislature had national banks in mind when it enacted GBL § 349 is not relevant. Rather, "preemption occurs . . . when there is outright or actual conflict between federal and state law . . . where compliance with both federal and state law is in effect physically impossible . . . or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress." Louisiana Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 368-69 (1986). In this case, there is outright conflict between the National Bank Act and the Plaintiff's invocation of GBL § 349, and the remedy sought by the Plaintiff would be particularly disruptive of the national banking operations of Wachovia. "State attempts to control the conduct of national banks are void if they conflict with federal law, frustrate the purposes of the National Bank Act, or impair the efficiency of national banks to discharge their duties." Bank of America v. San Francisco, supra, 309 F.3d at 561.

Thus, if the application of a state law to a national bank impairs its operating efficiency, the doctrine of federal preemption precludes the state law's enforcement and application in that particular context. If the Plaintiff had his way here, Wachovia would be forced to radically change the manner in which it does business in all fifty states.

**B. Pronouncements by the Office of Thrift Supervision Support Preemption in this Case.**

In his Opposition, the Plaintiff places substantial reliance on an opinion letter issued by

the Office of Thrift Supervision ("OTS"), the regulator for federal savings banks in the United States. (Plaintiff's Memo at 17-18). Even though Wachovia, as a national bank, is not subject to OTS jurisdiction,[4] it will nonetheless address the Plaintiff's argument because the OTS position in regard to preemption under the federal Home Owners Loan Act ("HOLA") is very similar to that which is being advanced by Wachovia here under the National Bank Act.[5]

The OTS opinion letter was issued by its staff counsel in 1996, which advised that the Indiana deceptive trade practice statute was not preempted by HOLA or its implementing regulations on the unique facts presented there.[6] However, simply citing individual cases where preemption was *not* found does not resolve the controversy presented in this case. Indeed, Wachovia has cited numerous cases going the other way, in which preemption of state deceptive trade practice statutes such as GBL § 349 expressly *was* found under federal banking law. See Wachovia's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at pp. 23-24 (citing several cases including two which were decided by the U.S. District Court for the Southern District of New York). In other words, as the respective briefing of the parties reveals, cases can be cited which both found and did not find preemption of state consumer protection statutes by federal banking law. Those cases do not so much represent a split in authority as they do a coming to different fact-specific conclusions when the particular circumstances of a given case are analyzed appropriately.

To that end, the OTS has promulgated a regulation and related analytical guidance for determining when a state law is preempted. Specifically, the regulation cited by the OTS in the

---

4 As a national bank, Wachovia is regulated by the Office of the Comptroller of the Currency ("OCC").

5 There are "striking similarities between OCC's preemptive regulation and the preemption regulation issued by the Office of Thrift Supervision under the Home Owner's Loan Act." *Fultz v. World Savings & Loan Ass'n*, 2008 WL 4131512 at *2 (W.D. Wash. Aug. 18, 2008).

6 The Plaintiff also cites to a Massachusetts case referenced in the OTS opinion letter which found that the Massachusetts deceptive trade practice statute was not preempted by HOLA on the facts of that case.

1996 opinion letter offered by the Plaintiff provides, in pertinent part:

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations a maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section.

12 C.F.R. § 560.2(a). Elaborating on this regulation, the OTS has further declared as follows:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted *narrowly. Any doubt should be resolved in favor of preemption*.

OTS Final Rule, 61 Fed. Reg. 50951, 50966-67 (September 30, 1996) (emphasis added).[7] Even though the regulation cited by the OTS in the 1996 opinion letter applies to *lending* operations of federal savings banks, the analysis can be applied generally to routine depository account operations such as that which is the focus of the current case. Under the OTS analytical framework then, there is a presumption in favor of preemption that shifts the burden to the Plaintiff to demonstrate that his state law claims "only incidentally affect the . . . operations of federal" banks. 12 C.F.R. § 560.2(c). Thus, while the OTS letter cited by the Plaintiff advised the applicant that the Indiana statute would not be preempted on those unique facts, the overall policy statement and analytical framework promulgated by the OTS compel a finding of

[7] Compounding the Plaintiff's misplaced reliance on the OTS letter is the fact that the regulation and conduct at issue there dealt with the making of loans. Accordingly, neither the OTS letter nor the regulation can be applied harmoniously to the garnishment scenario presented here.

preemption in this case.

As set forth above and in Wachovia's initial Memorandum in Support of Motion for Summary Judgment, the Plaintiff seeks to invalidate the $100 fee charged by Wachovia for the processing of the Harris Restraining Notice, even though that fee was expressly permitted under the terms of the National Bank Act and its implementing regulations. Furthermore, the Plaintiff seeks to effectively dismantle Wachovia's centralized system for processing garnishments, thus requiring Wachovia to accept service only at the branch where the affected account was opened, and even then only after the writ is domesticated and reissued through the local state court where that branch happens to be located.

Thus, the outcome sought by the Plaintiff here cannot in any way be characterized as only "incidentally affecting" the operations of Wachovia. Indeed, by his lawsuit, the Plaintiff seeks a complete overhaul and restructuring of Wachovia's garnishment processing operations. The relevant impact-on-operations test fails here, necessitating federal preemption in this case.

**C. The Plaintiff's Invocation of the Implied Covenant of Good Faith and Fair Dealing Does Not Change the Preemption Analysis.**

The Plaintiff concludes his Opposition by invoking for the first time the implied covenant of good faith and fair dealing in New York, and arguing that this implied covenant precludes Wachovia's assessment of a garnishment fee in this case. Once again, whether via an implied covenant of good faith and fair dealing or through the statutory claim under GBL § 349, the Plaintiff has failed to acknowledge the National Bank Act provision and implementing regulation at issue that expressly grant to Wachovia the power to determine whether and when to charge a processing fee for handling garnishments. State law simply cannot be used to invalidate a power which federal law expressly grants.

Additionally, the Plaintiff seems to be making a basic fairness argument here – in other

words, it is not fair that Wachovia should be able to charge a fee under federal law where an improper garnishment amounts to an "unlawful seizure." (Plaintiff's Memo at 23). However, this argument presupposes judgment in the Plaintiff's favor on the underlying central claim surrounding the propriety and efficacy of the garnishment proceeding itself. Unless and until this Court should ultimately conclude that Wachovia has violated any law in this case, the Plaintiff simply cannot jump to this conclusion.

**CONCLUSION**

Based on the authorities cited above, Wachovia respectfully requests that the instant motion of Wachovia for summary judgment dismissing the complaint of plaintiff as against Wachovia be granted, together with other appropriate and further relief as may be warranted under the circumstances.

Dated: New York, New York
August 16, 2010

Respectfully submitted,

ROSNER NOCERA & RAGONE, LLP
Attorneys for Defendant Wachovia Bank, NA

By: \S\Peter A. Ragone
Peter A. Ragone
John P. Foudy
110 Wall Street - 23rd Floor
New York, New York 10005
(212) 635-2244

TREANOR POPE & HUGHES
Attorneys for Defendant Wachovia Bank, NA

By: \S\Russell J. Pope
Russell J. Pope
29 W. Susquehanna Avenue
Towson, Maryland 21204
(410) 494-7777