UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
JAMES J. MCCARTHY,

|                                | Plaintiff(s),  | MEMORANDUM |
| ------------------------------ | -------------- | ------------------------ |
|                                |                | OPINION AND ORDER        |
| -against-                      |                | CV 08-1122 (ETB)         |

WACHOVIA BANK, N.A., MEL S. HARRIS,
and MEL HARRIS AND ASSOCIATES, LLC,

                                        Defendant(s).
-------------------------------------------------------------------------X

Before the court are motions for summary judgment by the plaintiff and each of the

defendants named herein, pursuant to Federal Rule of Civil Procedure 56.  For the following

reasons, plaintiff's motion for summary judgment is denied, defendants' motions are granted and

this action is dismissed in its entirety.


FACTS

This action seeks damages arising from the lodging of a post-judgment restraining notice

against the plaintiff's out-of-state bank account in Florida, pursuant to New York CPLR Section

5222.

At the time this action was commenced, the plaintiff, James J. McCarthy, resided in

Moriches, New York while also maintaining a residence in Venice, Florida, which he and his

wife occupied during the winter months.  (Pl. Local Civ. R. 56.1 Statement ("Pl. 56.1") ¶ 1.)

Plaintiff and his wife now reside solely in Florida.[1]  (Id.)

Defendant Wachovia was a national banking association organized and existing under the laws of the United States.[2]  (Wachovia Local Civ. R. 56.1 Statement ("Wachovia 56.1") ¶ 1.) Wachovia maintains its principal place of business in North Carolina and transacts business in numerous jurisdictions, including both New York and Florida.  (Id.)  As a result of its multi-jurisdictional presence, Wachovia customers can access their accounts or transact business from any Wachovia branch nationwide.  (Wachovia 56.1 ¶ 10.)  Wachovia customers can also access their accounts and transact business via the telephone, the internet or at Wachovia ATMs. (Wachovia 56.1 ¶¶ 11-12.)

Defendant Mel S. Harris is a New York attorney who practices law as a partner, member and/or manager of defendant law firm, Mel Harris and Associates, LLC, which is located in New York, New York.[3]  (Pl. 56.1 ¶ 3.)  Part of the Harris Defendants' business includes collecting and attempting to collect debts from consumers on behalf of third parties.  (Pl. 56.1 ¶ 4.)

In or about January 2008, plaintiff and his wife opened a bank account at Wachovia's branch located in Venice, Florida to serve their banking needs during the months they resided in Florida.  (Pl. 56.1 ¶ 5; Wachovia 56.1 ¶¶ 3-4.)  At the time the account was opened, plaintiff and his wife executed a Customer Access Agreement, which contained the following provision:

---

[1]  Plaintiff's wife is not a party to the within action.

[2]  On March 20, 2010, following the commencement of this action, Wachovia merged with Wells Fargo, N.A. and ceased to operate under the name Wachovia.  (Wachovia Mem. of Law in Supp. 1 n.1.)

[3]  Defendants Mel S. Harris and Mel Harris and Associates, LLC are collectively referred to herein as the "Harris Defendants."

**Acceptance of Terms and Conditions:**
I agree to be bound by the terms and conditions including, but not limited to Wachovia's Deposit Agreement and Disclosures, applicable to each product or service which I obtain from Wachovia now or in the future, which terms and conditions will be provided to me. I also agree to pay all fees associated with such products, accounts, and services in accordance with the fee schedules which will be provided to me by Wachovia.

(Pl. 56.1 ¶ 6; Wachovia 56.1 ¶ 6.)

Plaintiff also received a copy of Wachovia's Deposit Agreement and Disclosures for

Personal Accounts (the "Deposit Agreement") at the time he opened his account in Florida. (Pl.

56.1 ¶ 8; Wachovia 56.1 ¶ 7.) The Deposit Agreement contained the following provision:

27.   **Legal Process Affecting Accounts:** If legal action such as an attachment, garnishment, levy or other state or federal legal process ("legal process") is brought against your account, you may refuse to permit (or may limit) withdrawals or transfers from your account until the legal process is satisfied or dismissed. If we receive any document that appears or is purported to be legal process issued out of any court or government agency, you hereby authorize us to accept and comply with it, no matter how it was received by us. You hereby direct us not to contest on your behalf any such document or legal process and that we may take action to comply with such process as we determine to be appropriate in the circumstances without liability of us to you . . . You agree that because we have financial centers or offices in numerous jurisdictions and states other than where your account was opened, if we are served with any process or receive any document as referenced above in or from any jurisdiction or state, you hereby direct us to recognize and honor such service of process.

(Wachovia 56.1 ¶ 8.)

In or about August 2003, a debt collection action was commenced against plaintiff in

New York in the Suffolk County District Court, entitled <u>NCO Portfolio Management assignee of</u>

Amex Card Corp. v. James McCarthy, Index No. SMC 10443-03. (Pl. 56.1 ¶ 14; Wachovia 56.1 ¶ 18.) Service of process of the complaint in that action was effected on plaintiff by "nail and mail." (Pl. 56.1 ¶ 15.) On January 4, 2004, a default judgment was entered against plaintiff in the debt collection action in the amount of $8,794.70. (Pl. 56.1 ¶ 16; Wachovia 56.1 ¶ 19.)

On or about January 23, 2008, the Harris Defendants, on behalf of NCO Portfolio Management, attempted to collect on the default judgment by issuing a restraining notice (the "Restraining Notice") to Wachovia, pursuant to New York CPLR Section 5222. (Pl. 56.1 ¶ 19.) Wachovia's Legal Order Processing Unit, located in Philadelphia, Pennsylvania, received the Restraining Notice on or about February 29, 2008. (Wachovia 56.1 ¶ 20.) The Restraining Notice advised Wachovia that plaintiff was a judgment debtor against whom a judgment in favor of NCO Portfolio Management had been entered and that $8,891.74 - which represented the amount of the judgment with interest - remained due and owing. (Wachovia 56.1 ¶ 21; Pl. Ex. 8.) The Restraining Notice also contained the following language:

> **TAKE NOTICE** that pursuant to subdivision (b) of Section 5222 of the Civil Practice Law and Rules, which is set forth in full herein, you are hereby forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such proceeds or pay over or otherwise dispose of any such debt except as therein provided.

> **TAKE FURTHER NOTICE** that this notice also covers all property in which the judgment debtor has an interest now or hereafter coming into your possession or custody and all debts coming due from you to the judgment debtor.

(Pl. 56.1 ¶ 19; Wachovia 56.1 ¶ 22.)

At the time Wachovia received the Restraining Notice, plaintiff's bank account contained the sum of $5,712.57, which was subsequently restrained by Wachovia. (Wachovia 56.1 ¶ 23.)

Wachovia advised the Harris Defendants that it would require a "turnover order" or a "conditional release letter with signatures of [the] account holders" in order to disperse the funds contained in plaintiff's account. (Wachovia 56.1 ¶ 24.)

By letter dated February 29, 2008, Wachovia forwarded plaintiff a copy of the Restraining Notice and advised him that the funds in his account had been restrained. (Pl. 56.1 ¶ 20; Wachovia 56.1 ¶ 26.) The February 29, 2008 letter further advised plaintiff that a $100.00 processing fee had been debited to his account. (Pl. 56.1 ¶ 21.)

Wachovia never dispersed any funds from plaintiff's account, but rather held the funds in suspense, less the $100.00 administrative processing fee. (Wachovia 56.1 ¶ 25.) On March 2, 2009, after one year had elapsed from the time that Wachovia was served with the Restraining Notice, Wachovia lifted the restraint on the funds in plaintiff's account. (Wachovia 56.1 ¶ 28.) On March 4, 2009, plaintiff withdrew the funds from his Wachovia account and directed that his account be closed. (Wachovia 56.1 ¶ 29.) At no time did Wachovia pay out any of the funds that had been restrained pursuant to the Restraining Notice.

Plaintiff commenced the within action on March 18, 2008. Plaintiff subsequently amended his Complaint twice - first on April 15, 2008 and again on January 26, 2010. The Second Amended Complaint contains the following six causes of action: (1) violation of plaintiff's Fourth, Fifth and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983; (2) abuse of process (alleged solely against the Harris Defendants); (3) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692(e) (alleged solely against the Harris Defendants); (4) failure to provide plaintiff with notice of the restraining order, pursuant to New York CPLR 5222 (alleged solely against the Harris Defendants); (5) tortious interference with a

contractual relationship by the Harris Defendants and breach of contract by Wachovia; and (6) a

claim pursuant to the New York General Business Law § 349. Each of the parties now moves for

summary judgment on all of the claims alleged in the Second Amended Complaint.

The facts set forth herein are taken from the parties' respective 56.1 statements.

However, the Court notes that the 56.1 Statement submitted by the Harris Defendants fails to

comply with Local Civil Rule 56.1 in that none of the statements contained therein cite to

admissible evidence as support. <u>See</u> Local Civ. R. 56.1(d) ("Each statement by the movant or

opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement

of material fact, must be followed by citation to evidence which would be admissible, set forth as

required by Federal Rule of Civil Procedure 56(e)".). For this reason, the Harris Defendants'

56.1 Statement is disregarded. <u>See</u> <u>Holtz v. Rockefeller & Co., Inc.</u>, 258 F.3d 62, 73 (2d Cir.

2001) ("[W]here there are no citations or where the cited materials do not support the factual

assertions in the [56.1] Statements, the Court is free to disregard the assertion[s].") (collecting

cases). Moreover, the Harris Defendants failed to submit a counter-statement in response to

plaintiff's 56.1 Statement, specifically controverting the statements contained in plaintiff's 56.1

Statement, as required by the Local Civil Rules. <u>See</u> Local Civ. R. 56.1(c) ("Each numbered

paragraph in the statement of material facts set forth in the statement required to be served by the

moving party will be deemed to be admitted . . . unless specifically controverted by a

correspondingly numbered paragraph in the statement required to be served by the opposing

party."). Accordingly, the statements contained in plaintiff's 56.1 Statement, as they pertain to

the Harris Defendants, are deemed admitted for purposes of the within motions. <u>See</u> <u>id.</u>; <u>see also</u>

<u>Giannullo v. City of New York</u>, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails

to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). Finally, plaintiff too failed to submit a counter-statement in response to defendant Wachovia Bank, N.A.'s ("Wachovia") 56.1 Statement, as required. Accordingly, the statements contained in Wachovia's 56.1 Statement are deemed admitted as well. See id.

DISCUSSION

I.    Legal Standard

       Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden is on the moving party to establish the lack of any factual issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The very language of this standard reveals that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248.

       The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. Under Rule 56(e), the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts

-7-

showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof' . . . because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." SEC v. Meltzer, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988)) (internal citations omitted). "Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim." Meltzer, 440 F. Supp. 2d at 187.

II.      The Deposit Agreement with Wachovia Authorizes the Restraint of Plaintiff's Funds

As an initial matter, the Deposit Agreement that plaintiff received at the time he opened his bank account with Wachovia authorized Wachovia to restrain his funds, if legally directed to do so, and therefore bars plaintiff's claims against Wachovia entirely. Specifically, the Deposit Agreement, which plaintiff agreed to be bound by when executing the Customer Access Agreement at the time he opened his account, states that plaintiff "hereby authorize[s] [Wachovia] to accept and comply" with any order of "attachment, garnishment, levy or other state or federal legal process." (Pl. Ex. 11 at 12 ¶ 27.) The Deposit Agreement further states that plaintiff "direct[s] [Wachovia] not to contest on [his] behalf any such document or legal process and that [Wachovia] may take action to comply with such process as [it] determine[s] to be appropriate in the circumstances without liability." (Id.)

Plaintiff attempts to circumvent this express contractual language by asserting that the

-8-

Wachovia representative who opened his account for him, Karen Mattingly, never explained the contents of the Deposit Agreement to him at the time he signed the Customer Access Agreement, nor did plaintiff read the Deposit Agreement himself. (Pl. Mem. of Law in Opp'n to Wachovia Mot. for Summ. J. 3-4.) Plaintiff contends that, as a result, he should not be held to the provisions contained in the Deposit Agreement.

It is black-letter law that parties are legally "bound by the contracts they sign whether or not the party has read the contract as long as there is no fraud, duress or some other wrongful act of the other party." Tuskey v. Volt Information Sciences, Inc., No. 00Civ7410, 2001 WL 873204, at *3 (S.D.N.Y. Aug. 3, 2001) (collecting cases); see also State Bank of India v. Star Diamonds, Inc., 901 F. Supp. 177, 179 (S.D.N.Y. 1995) ("Under New York law, a party is legally bound by his or her signature to a contract."). "The party is 'conclusively presumed to know its contents and to assent to them.'" State Bank of India, 901 F. Supp. at 179 (quoting Metzger v. Aetna Ins. Co., 227 N.Y. 411, 416 (1920)); see also Maines Paper and Food Services, Inc. v Adel, 681 N.Y.S.2d 390, 391 (3d Dep't 1998) ("In the absence of fraud, duress or some other wrongful act by a party to a contract, a signer of an agreement is deemed to be conclusively bound by its terms whether or not he or she read it.").

Plaintiff admitted at his deposition that he received the Deposit Agreement at the time he opened his account with Wachovia. (Pl. Dep. 14.) Moreover, the Customer Access Agreement submitted into evidence by Wachovia, which incorporates the provisions of the Deposit Agreement, bears plaintiff's signature. (Wachovia Ex. 1.) Finally, plaintiff has not adduced any evidence that would support a claim that his signature on the Customer Access Agreement was procured by fraud, duress or some other wrongful act.

Whether or not the contents of the Deposit Agreement were explained to plaintiff at the time he opened his account - or whether or not he chose to read them - has no bearing on the binding nature of the documents.  By signing the Customer Access Agreement, plaintiff "agreed[d] to be bound by the terms and conditions including, but not limited to Wachovia's Deposit Agreement and Disclosures . . . ."  (Wachovia Ex. 1.)  Accordingly, the Deposit Agreement, which expressly authorized Wachovia to honor the restraining order received from the Harris Defendants, is legally enforceable and therefore precludes plaintiff's claims against Wachovia.  See Tuskey, 2001 WL 873204, at *3-4 (finding agreement signed by plaintiff to be enforceable where plaintiff asserted that she "did not 'understand' the agreement" and that "it was never 'properly explained' to her").

For the foregoing reasons, plaintiff's claims against Wachovia fail as a matter of law.


III.    Section 1983

Even if plaintiff's claims against Wachovia were not barred by the Deposit Agreement, plaintiff's Section 1983 claim against both Wachovia and the Harris Defendants fails as a matter of law.  To prevail on a claim brought pursuant to Section 1983, a plaintiff must demonstrate: (1) the deprivation of a constitutional right; (2) by a person acting under the "color of state law." Nealy v. Berger, No. 08-CV-1322, 2009 WL 704804, at *4 (E.D.N.Y. Mar. 16, 2009) (citing 42 U.S.C. § 1983).  Plaintiff herein fails to establish either of the foregoing elements.

A.    There is no Constitutional Violation

In Count I of his Second Amended Complaint, plaintiff alleges that in issuing and honoring the Restraining Notice pursuant to New York CPLR Section 5222, seeking to restrain

-10-

property located outside of New York, defendants violated his due process rights in that they precluded his ability to collaterally attack the underlying default judgment on jurisdictional grounds. (2d Am. Compl. ¶ 32.) Contrary to plaintiff's assertions, the case law is clear that a restraint on out-of-state property is both permissible under CPLR Section 5222 and constitutional.

        1.      CPLR Section 5222 Permits Out-of-State Restraints

In Koehler v. Bank of Bermuda, Ltd., 12 N.Y.3d 533 (2009), the New York Court of Appeals recently addressed the issue of "whether a court sitting in New York may order a bank over which it has personal jurisdiction to deliver [property] owned by a judgment debtor . . . to a judgment creditor, pursuant to CPLR article 52, when [that property] is located outside New York." Id. at 536. The Court of Appeals answered the question in the affirmative. See id. Specifically, the court held that as long as the New York court has personal jurisdiction over a defendant, regardless of whether it is the judgment debtor himself, or the garnishee bank, the court may order it to turn over out-of-state property to a judgment creditor. See id. at 541.; see also Gryphon Domestic VI, LLC v. APP Int'l Fin. Co., B.V., 836 N.Y.S.2d 4, 5 (1ˢᵗ Dep't 2007) (reversing lower court's order that a turnover order cannot reach property outside New York); Abuhamda v. Abuhamda, 654 N.Y.S.2d 11, 11-12 (1ˢᵗ Dep't 1997) (holding that a New York court can order the restraint of property located outside of New York so long as it has jurisdiction over the transferor).

In issuing its decision to the certified question, the Court of Appeals went to great lengths to differentiate pre-judgment attachment, which is governed by CPLR article 62, from post-judgment enforcement, noting that "[w]hile pre-judgment attachment is typically based on

-11-

jurisdiction over property, post-judgment enforcement requires only jurisdiction over persons."
Id. at 537.  According to the court, although "[i]t is well-established that, where personal
jurisdiction is lacking, a New York court cannot attach property not within its jurisdiction . . .
CPLR article 52 contains no express territorial limitation barring the entry of a turnover order
that requires a garnishee to transfer money or property into New York from another state or
country." Id at 538-39.  Accordingly, the court found that "a court sitting in New York that has
personal jurisdiction over a garnishee bank can order the bank to produce [property] located
outside New York, pursuant to CPLR 5225(b)." Id. at 541.

 Here, because Wachovia has branches within New York - and therefore conducts
business in New York - it is subject to the jurisdiction of the New York courts.  Accordingly,
under the Court of Appeals' holding in Koehler, it was permissible for defendants to issue and
honor the restraining notice served pursuant to New York CPLR Section 5222.[4]

  2. There is No Due Process Right Implicated Here

 Contrary to plaintiff's assertions, the defendants' restraint of his bank
account did not violate any due process right.  In McCahey v. L.P. Investors, 774 F.2d 543 (2d
Cir. 1985), the Second Circuit specifically rejected the plaintiff's claim that notice and a hearing
must be provided to judgment debtors prior to a seizure.  See id. at 550.  According to the court,

---

 [4] Plaintiff argues that Koehler does not apply to the within action because it pertained to
turnover orders rather than restraining orders. (Pl. Mem. of Law 17.)  However, a restraining
order is a less intrusive remedy than a turnover order.  It follows, therefore, that if New York
courts have the authority to order garnishees to turn over out-of-state property belonging to a
judgment debtor, they have similar authority to order such garnishees to merely restrain out-of-
state property.  Moreover, the holding in Abuhamda v. Abuhamda, 654 N.Y.S.2d 11 (1st Dep't
1997) makes clear that New York courts can restrain out-of-state property.  See Abuhamda, 654
N.Y.S.2d at 11-12.

"a judgment debtor is not constitutionally entitled to notice and a hearing prior to a . . .

garnishment." Id. at 547 (citing Endicott-Johnson Corp. v. Encyclopedia Press, Inc., 266 U.S.

285 (1924)). Rather, "the existence of the underlying judgment [is] sufficient 'notice of what

will follow.'" McCahey,7774 F.2d at 547 (quoting Endicott-Johnson, 266 U.S. at 288).

       While plaintiff herein goes to great lengths to analogize the within action to those cases

pertaining to pre-judgment seizures, in which notice and a hearing is required, (Pl. Mem. of Law

13-15), the Second Circuit has held that "the law of pre-judgment remedies, while suggestive,

does not automatically govern post-judgment remedies, which are available only after all doubt

as to liability has been erased." McCahey, 774 F.2d at 548.  According to the Circuit,

              That level of procedural protection for debtors is not constitutionally
              required even in the case of pre-judgment attachments, when liability
              has been determined.  A fortiori, it can hardly be required where the
              creditor's claim has been finally confirmed by a court, and where the
              risk that the debtor will conceal assets is stronger than in the pre-
              judgment context.

Id. at 550.  Ultimately, the McCahey court concluded that "New York's statutory scheme [with

respect to post-judgment garnishments] provides sufficient notice and otherwise meets due

process standards . . . ." Id.; see also Huggins v. Pataki, No. 01 CV 3016, 2002 WL 1732804, at

*3-4 (E.D.N.Y. July 11, 2002) (applying McCahey to reject plaintiff's claim that a post-judgment

garnishment of his bank account violated his due process rights); Johnson, 1996 WL 706893, at

*4 ("New York's postjudgment remedies have been found to satisfy due process requirements

under the Fourteenth Amendment.").

       Moreover, with respect to Wachovia, "[a] bank served with a restraining notice pursuant to

CPLR § 5222 has no discretion in deciding whether to honor the notice and may be held liable for

damages to a judgment creditor . . . for not complying with the notice." Johnson, 1996 WL 706893,

at *4 (citing Mazzuka v. Bank of N. Am., 280 N.Y.2d 495 (1967)). Rather, "it is the responsibility

of the judgment debtor to arrange to release a restrained account." Johnson, 1996 WL 706893, at

*4 (citing N.Y. C.P.L.R. § 5239). Accordingly, a bank's actions in complying with a restraining

notice served upon it do not give rise to a cognizable federal cause of action. See Johnson, 1996 WL

706893, at *4 (dismissing plaintiff's Section 1983 claim).

Finally, although plaintiff asserts that the issuance and honoring of the Restraining Notice

precluded his ability to collaterally attack the underlying judgment on jurisdictional grounds, this

is simply untrue. Both CPLR Sections 5239 and 5240 provide mechanisms for challenging the

validity of the Restraining Notice. See N.Y. C.P.L.R. § 5239 ("[A]ny interested person may

commence a special proceeding against the judgment creditor or other person with whom a

dispute exists to determine rights in the property or debt."); N.Y. C.P.L.R. § 5240 (stating that the

court may "at any time, on its own initiative or the motion of any interested person, . . . make an

order denying, limiting, conditioning, regulating, extending or modifying the use of any

enforcement procedure"). Plaintiff failed to avail himself of these statutory remedies. Moreover,

it is undisputed that plaintiff has never sought to vacate the underlying default judgment levied

against him. Accordingly, plaintiff's claim that he defendants' actions precluded him from

challenging the default judgment entered against him is without merit.

For the foregoing reasons, plaintiff is unable to demonstrate a constitutional violation by

defendants.

     B.    The Defendants are not State Actors

        Even if plaintiff were able to demonstrate a constitutional violation, his Section

-14-

1983 claim would still fail because the defendants were not acting under color of state law when they restrained his bank account. "An individual acts under color of state law when he or she exercises power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Nealy, 2009 WL 704804, at *4 (quoting Polk County v. Dodson, 454 U.S. 312, 317-18 (1981)). This "traditional definition" has been broadened, however, "to include 'the conduct of non-governmental actors whose actions are fairly attributable to the state.'" Johnson v. Chemical Bank, No. 96 Civ. 4262, 1996 WL 706893, at *4 (S.D.N.Y. Dec. 9, 1996) (quoting Srubar v. Rosenberg, 875 F. Supp. 155, 162 (S.D.N.Y. 1994), aff'd, 71 F.3d 406 (2d Cir. 1995)). Accordingly, a private actor's conduct may be deemed to be state action where:

> the complained of conduct results from a state agent's encouragement or command, the state and private actor jointly participate in depriving plaintiff of his rights, the granting of benefits to a private actor by the state inseparably links them together, or the private actor undertakes to perform activities ordinarily exclusively engaged in by government.

Johnson, 1996 WL 706893, at *4-5 (quoting Dahlberg v. Becker, 748 F.2d 85, 92 (2d Cir. 1984)); see also Nealy, 2009 WL 704804, at *5 ("[T]he Court recognizes that a private actor can be considered as acting under the color of state law for purposes of Section 1983 if the private actor was 'a willful participant in joint activity with the State or its agents.'"). "The 'under color of state law' requirement of a § 1983 claim is 'essential.'" Johnson, 1996 WL 706893, at *4 (quoting West v. Atkins, 478 U.S. 42, 48 (1988)).

Plaintiff herein alleges that by relying on CPLR Section 5222 in seeking to restrain plaintiff's property located outside of New York, the Harris Defendants acted under color of

state law. (2d Am. Compl. ¶ 33; Pl. Mem. of Law 17.)  Plaintiff further asserts that by

honoring the restraining notice, Wachovia similarly acted under color of state law. (2d Am.

Compl. ¶ 34; Pl. Mem. of Law 17.)  However, plaintiff offers no legal authority for such

allegations.  Moreover, "[t]he mere fact that defendants utilized state statutes to pursue a state

court remedy against the plaintiff does not constitute 'state action' by private parties."

Johnson, 1996 WL 706893, at *5 (citing Dahlberg, 748 F.2d at 89).  Accordingly, plaintiff has

failed to demonstrate that defendants are state actors within the meaning of Section 1983.

Based on the foregoing, plaintiff's Section 1983 claim fails as a matter of law.

Plaintiff's motion for summary judgment with respect to his Section 1983 claim is accordingly

denied.  Defendants' motions for summary judgment are granted and the Section 1983 claim is

dismissed.


IV.    Wachovia Had No Duty to Investigate the Validity of the Restraining Notice

Although not pleaded in the Second Amended Complaint, plaintiff argues in his

Memorandum of Law in support of his motion for summary judgment that Wachovia knew or

should have known that the Restraining Notice was facially defective in that it could only

properly restrain property located in Suffolk County, New York. (Pl. Mem. of Law 11-12.)  As

set forth above, plaintiff is incorrect as to the reach of the Restraining Notice.  The New York

Court of Appeals' decision in Koehler makes clear that New York courts can restrain property

located outside of New York.

Moreover, there is no requirement that a garnishee bank be required to investigate the

validity of a restraining notice served upon it.  Under CPLR Section 5209, entitled "Discharge

of Garnishee's Obligation,"

> A person who, pursuant to an execution or order, pays or delivers, to the judgment creditor or a sheriff or receiver, money or other personal property in which a judgment debtor has or will have an interest, or so pays a debt he owes the judgment debtor, is discharged from his obligation to the judgment debtor to the extent of the payment or delivery.

N.Y. C.P.L.R. § 5209. "The garnishee's compliance with CPLR 5209 is a safe harbor that preempts the judgment debtor's common-law claim that the garnishee should have investigated the validity of the execution." Yu v. Riggs Nat'l Bank of Washington, D.C., 670 N.YS.2d 187, 187 (1ˢᵗ Dep't 1998); see also Jonas v. Citibank, N.A., 414 F. Supp. 2d 411, 417 (S.D.N.Y. 2006) ("C.P.L.R. 5209 has been understood to bar a judgment debtor's claim made against a garnishee for payment of a debt or delivery of property pursuant to an execution.").

Accordingly, plaintiff's argument that Wachovia should have investigated the validity of the Restraining Notice served upon it by the Harris Defendants fails as a matter of law.


V.      The FDCPA

The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The sixteen subsections contained in Section 1692e of the Act provide a non-exhaustive list of practices that fall within the FDCPA's ban. See id. A debt collection practice may violate the FDCPA even if it does not fall within any of the enumerated circumstances set forth in Section 1692e, see Bentley v. Great Lakes Collection Bureau, Inc., 6 F.3d 60, 62 (2d Cir. 1993) (citing Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993)), and "[a] single violation of § 1692e is sufficient to

-17-

establish civil liability under the FDCPA." Clomon, 988 F.2d at 1318 (citation omitted); see also

15 U.S.C. § 1692k (establishing civil liability for "any debt collector who fails to comply with

any provision of this subchapter").

The test for determining whether a collection notice violates the FDCPA is "an objective

standard, measured by "how the 'least sophisticated consumer' would interpret the notice

received from the debt collector." Russell v. Equifax A.R.S., 74 F.3d 30, 34 (2d Cir. 1996)

(citing Clomon, 988 F.2d at 1318). The "basic purpose" of this standard is to "ensure that the

FDCPA protects all consumers, the gullible as well as the shrewd." Id. "This least-

sophisticated-consumer standard best effectuates the [FDCPA's] purpose of limiting the

'suffering and anguish' often inflicted by independent debt collectors." Russell v. Equifax

A.R.S., 74 F.3d at 34 (quoting S. Rep. No. 95-382, 95th Cong., 1st Sess. 3 (1977), reprinted in

1977 U.S.C.C.A.N. 1695, 1696).

A debt collector who is found to have violated the FDCPA is liable for actual damages

incurred by the plaintiff, as well as any other damages that the court, in its discretion, may find

appropriate, not to exceed $1,000, plus reasonable attorney's fees and costs. See 15 U.S.C. §

1692k(a); Russell, 74 F.3d at 33. Moreover, the FDCPA is a strict liability statute. See Russell,

74 F.3d at 34. Accordingly, "a consumer need not show intentional conduct by the debt collector

to be entitled to damages." Id.

The plaintiff herein alleges that the Harris Defendants violated the FDCPA in that the

"Restraining Notice falsely represented that it was a document approved by a New York State

Court which authorized the restraint of [plaintiff's] property located in the State of Florida." (2d

Am. Compl. ¶ 39.) As set forth above, the New York Court of Appeals has held that CPLR

Section 5222 permits the restraint of out-of-state property. Accordingly, the restraint of plaintiff's funds in his Florida bank account was permissible and, therefore, "approved by a New York State Court." Contrary to plaintiff's assertions, the Restraining Notice had "efficacy" beyond Suffolk County, New York. (Id.) As such, nothing in the Restraining Notice was false, deceptive or misleading and plaintiff's FDCPA claim fails as a matter of law.

For the foregoing reasons, the Harris Defendants' motion for summary judgment is granted with respect to plaintiff's FDCPA claim. Plaintiff's motion for summary judgment with respect to that claim is denied and the FDCPA claim is hereby dismissed.

VI.     The Remaining State Claw Claims

A.     Abuse of Process

Plaintiff alleges that the Harris Defendants' actions in serving the Restraining Notice that led to plaintiff's bank account being frozen constitute an abuse of process. An abuse of process claim consists of three elements: "(1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." Curiano v. Suozzi, 63 N.Y.2d 113, 116 (1984). While it is clear that the Harris Defendants availed themselves of a "regularly issued process" - the Restraining Notice - plaintiff has failed to offer any evidence from which the Court could conclude that the Harris Defendants possessed - or may have possessed - the requisite intent to harm the plaintiff. Nor is there any evidence in the record that would support a prima facie showing as to the third element. Accordingly, plaintiff's abuse of process claim fails as a matter of law.

-19-

The Harris Defendants' motion for summary judgment is granted with respect to plaintiff's claim for abuse of process and the claim is hereby dismissed.

B.    Failure to Provide Notice Under NY CPLR Section 5222

Plaintiff further alleges that the Harris Defendants violated New York CPLR Section 5222(d) by failing to provide him with notice of the underlying judgment or a copy of the Restraining Notice at his residence or place of employment within one year of the service of the Restraining Notice. The Harris Defendants assert that they did in fact provide plaintiff with the required notice. In support of their assertion, the Harris Defendants provided the Court with their collection notes, which indicate that a "426 Letter" was sent to plaintiff on January 23, 2008, the same day that the Restraining Notice was served on Wachovia. (Harris Def. 56.1 Statement, Ex. A.) According to the Harris Defendants, "426" is their internal code for a CPLR 5222 notice. (Harris Def. Mem of Law 15.) Plaintiff denies receiving any such notice from the Harris Defendants.

CPLR 5222(d) clearly mandates that a notice complying with the requirements set forth in CPLR 5222(e) be served upon a judgment debtor. See N.Y. C.P.L.R. 5222 (d), (e); see also Friedman v. Mayerhoff, 156 Misc. 2d 295, 297 (N.Y. Civ. Ct. 1992). However, the statute "provide[s] no guidance as to the remedy for noncompliance." Friedman, 156 Misc. 2d at 298. At least one court that has interpreted this statutory provision found that "the failure to comply with CPLR 5222 . . . necessitates vacating the restraining notice and/or execution." Id. (citing Weinstein v. Gillers, 119 Misc. 2d 122 (N.Y. Sup. Ct. 1983)). Nothing in the case law indicates that a defendant's failure to comply with CPLR 5222(d) provides the plaintiff with recourse in the form of money damages.

-20-

Vacating the Restraining Notice has no practical effect herein since the Restraining Notice has long since expired and none of plaintiff's funds were ever dispersed. Rather, upon the expiration of the Restraining Notice, plaintiff promptly withdrew all of his funds from his Wachovia account, less the $100 processing fee that Wachovia was contractually entitled to withhold.

Moreover, plaintiff does not dispute that he received a copy of the Restraining Notice from Wachovia. It is further undisputed that, having received a copy of the Restraining Notice, plaintiff chose not to commence legal proceedings to challenge it or the underlying default judgment. Accordingly, while there is a question as to whether the Harris Defendants provided plaintiff with the required statutory notice under CPLR 5222, such an alleged failure is harmless because plaintiff otherwise received a copy of the Restraining Notice. Moreover, since the funds were never dispersed and plaintiff recovered all of his funds upon the expiration of the Restraining Notice - less the processing fee - plaintiff has not been damaged in any way.

For the foregoing reasons, without deciding whether non-compliance with CPLR 5222 creates a private cause of action, the Harris Defendants are granted summary judgment with respect to plaintiff's claim pursuant to CPLR 5222(d) and the claim is hereby dismissed.

C.    Tortious Interference with a Contractual Relationship

Plaintiff also alleges that the Harris Defendants' intentionally procured a breach of contract between plaintiff and Wachovia. Although not specifically stated in the cause of action, plaintiff's claim appears to also imply that Wachovia breached the contract between it and plaintiff. However, as set forth above, Wachovia in fact adhered to the contract in place between it and plaintiff by honoring the Restraining Notice served upon it. Accordingly, there was no

-21-

breach on Wachovia's part.

In order to succeed on a claim for tortious interference with a contract, plaintiff must

provide proof of an actual breach of contract. See D'Andrea v. Rafla-Demetrious, 146 F.3d 64,

64 (2d Cir. 1998) ("Because there was no breach of contract in the instant case, [plaintiff's]

tortious interference with contractual relations claim must fail."); Downtown Women's Ctr., Inc.

v. Carron, 655 N.Y.S.2d 479, 480 (1st Dep't 1997) (stating that actual breach of a contract is

"necessary to any cause of action for tortious interference with contract"). Because there was no

breach of contract here, there can be no claim for tortious interference with the contract.

Accordingly, plaintiff's claim for tortious interference with a contract fails as a matter of

law and is dismissed.

D.      New York General Business Law Section 349

Plaintiff's final state law claim alleges that defendants violated Section 349 of the

New York General Business Law, which declares unlawful any "[d]eceptive acts or practices in

the conduct of any business, trade or commerce or in the furnishing of any services" in New

York. N.Y. Gen. Bus. Law § 349. According to plaintiff, defendants violated this statute by

"wrongfully issuing judicial restraining notices and wrongfully seizing property predicated upon

such wrongful and ineffective restraining notices." (2d Am. Compl. ¶ 48.)

A plaintiff pursuing a claim under Section 349 must establish three elements: (1) "the

challenged act or practice was consumer-oriented"; (2) the act or practice "was misleading in a

material way"; and (3) "the plaintiff suffered injury as result of the deceptive act." Stutman v.

Chemical Bank, 95 N.Y.2d 24, 29 (2000). With respect to the first element, plaintiff "must

demonstrate that the acts or practices have a broader impact on consumers at large." Oswego

-22-

Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (1995).
"Private . . . disputes, unique to the parties, . . . would not fall within the ambit of the statute."
Id. (citation omitted).

Here, plaintiff has failed to offer any evidence from which the Court could conclude that
the alleged deceptive practices impacted anyone other than the plaintiff himself. See P.
Kaufmann, Inc. v. Americraft Fabrics, Inc., 232 F. Supp. 2d 220, 226 (S.D.N.Y. 2002)
(dismissing Section 349 counterclaim where it focused entirely on the "purportedly misleading
actions" taken by plaintiff against defendants and failed to allege how the behaviors "affected a
wide range of consumers"). Moreover, as with plaintiff's FDCPA claim, discussed supra, none
of the actions taken by defendants were false, misleading or deceptive. The New York Court of
Appeals has held that CPLR Section 5222 permits the restraint of out-of-state property.
Accordingly, the Restraining Notice served by the Harris Defendants and honored by Wachovia
was not, as plaintiff alleges, "wrongfully issued" or "ineffective."

Accordingly, plaintiff's New York General Business Law Section 349 claim fails as a
matter of law. Defendants' motions for summary judgment are granted with respect to the
Section 349 claim and the claim is hereby dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are granted and
plaintiff's motion for summary judgment is denied. This action is dismissed in its entirety.

The Clerk of the Court is directed to enter judgment accordingly and to mark this case

-23-

closed.

**SO ORDERED:**

Dated: Central Islip, New York
      January 11, 2011

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge
